No.  3--00--0981

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2002

NATIONAL CITY BANK OF )  On Petition for Administrative 

MICHIGAN/ILLINOIS, )  Review from the Property Tax

   )  Appeal Board

Petitioner, )  

)

v. )  

)

THE ILLINOIS PROPERTY TAX )  

APPEAL BOARD, THE KANKAKEE )

COUNTY BOARD OF REVIEW and )  Nos.  97--5138--C--3

THE CITY OF KANKAKEE, )        98--1753--C--3

)

Respondents. )  

_________________________________________________________________

JUSTICE SLATER delivered the opinion of the court:

_________________________________________________________________

Petitioner National City Bank of Michigan/Illinois filed a petition for review of the 1997 and 1998 real estate assessments of certain property owned and partially occupied by petitioner.  The Illinois Property Tax Appeal Board (PTAB) ruled that no change in the assessments was warranted and this appeal followed.  We affirm.

Background

The 1996 valuation and subsequent reduction

In 1996, the subject property consisted of a six-story multi-tenant commercial office building located in the central business district of Kankakee, Illinois.  After the property was assessed at $1,375,497 (reflecting a fair market value of $4,165,648 and an assessment level of 33.02%), petitioner sought review by the PTAB.  Petitioner submitted an appraisal report by John Mundie indicating that the value of the property was $2 million.  The Kankakee County Board of Review (Board) submitted an appraisal report by Roger Tibble estimating the property at $2,570,000.  The PTAB found Mundie's appraisal to be more credible, in part because, unlike Mundie, Tibble was not present at the hearing and therefore could not be cross-examined.  The PTAB reduced the assessed valuation of the subject property to $660,400, reflecting a fair market value of $2 million.  The Board appealed that decision and this court affirmed.

The 1997 consolidation and subsequent valuations

In 1997, at petitioner's request, the subject property was combined with four other parcels of property that included a drive-up banking facility, a parking garage and a parking lot.  The combined properties were issued a new property identification number and were assessed as a single parcel.  This parcel was assessed at $1,753,158 in 1997 and 1998, representing a fair market value of approximately $5.3 and $5.2 million in those years.  Petitioner sought review of the 1997 and 1998 assessments from the PTAB.

Evidentiary Hearing

At the hearing on September 22, 2000, petitioner presented the complete narrative appraisal report and testimony of John Mundie.  Mundie's report was the same one that had been submitted in the prior proceedings concerning the 1996 taxes, and he testified that there had been no significant change in the value of the property.  Mundie's appraisal report included all three of the accepted approaches of estimating value:  the cost approach, the income approach and the sales comparison approach.  Of the three, Mundie gave the greatest weight to the income approach, primarily due to the lack of comparable sales in the Kankakee area.  Mundie estimated the value of the property at $2 million.

On cross-examination, Mundie testified that he was not aware that the parcel containing the office building had been consolidated with four other parcels in 1997.  After learning of the consolidation, Mundie acknowledged that his appraisal was limited to the office building and did not include the other parcels.  Petitioner's counsel agreed that Mundie's testimony was being offered only with respect to the portion of the property containing the office building.  Mundie was not asked if his opinion of the value of the office building would have been affected by the consolidation.

The only other witness called by petitioner was David West, the Kankakee Township assessor.  West testified that in 1996 the assessed valuation of the office building was $1,375,497.  After consolidation the office building was again valued at $1,375,497 in 1997 and 1998, although that figure represented only a portion (approximately 78%) of the overall assessed valuation of the combined parcels.  The assessed valuation of the drive-up bank and the parking garage were higher in 1996 than after the 1997 consolidation.  West testified that the property assessment was based on looking at the property as a whole and how each parcel complemented the others.

When West was asked if there had been a sale or transfer of the ownership of the property, he indicated that ownership of the office building was transferred in the year 2000 for $1,000,050.  West did not believe that the transfer included the land, just the building.  When West was recalled as a witness for the Board, he stated that the transfer was a sale and leaseback, which was not considered an arm's length transaction.  West also testified that he valued the property by relying on previous assessed valuations and by comparing the property to the most comparable property in the township, the Executive Office Center.

The Board's primary witness was appraiser Raymond Rogers.  Rogers prepared a limited restricted appraisal report, which he described as a "cursory review" that analyzed a property's most important features.  Rogers testified that his appraisal included the office building, the parking garage, the drive-up facility and the approximately 1.7 acres that comprised the entire property.  According to Rogers, the parking garage and the drive-up facility complement the office building and enhance its value.  Rogers based his opinion of the value of the property on an analysis of the estimated income of the property and on market sales of other offices, bank buildings and mixed-use buildings.  Rogers visited the property three times and inspected the office building, the drive-up facility and the parking garage.  Rogers valued the property at $4.4 to $4.6 million.

Rogers criticized Mundie's appraisal on a number of grounds.  For example, Rogers believed that Mundie's failure to classify the office building as a banking facility resulted in lower rent projections, a lower sales price and a diminished value.  Bank buildings cost more to build and they rent and sell for more due to upgraded flooring, marble walls, hardwood trim, built-in vaults and safety deposit rooms and high-grade security systems.  According to Rogers, none of the rental and sales comparables used by Mundie were similar to the subject property, as they were pure office buildings, not banking facilities.

The PTAB's Decision

The PTAB found that no reduction in the assessment of the subject property was warranted because petitioner failed to prove by a preponderance of the evidence that the property was overvalued.  The PTAB noted that Mundie's appraisal represented only a portion fo the property and petitioner presented no evidence regarding the value of the whole parcel.  In rejecting a "piecemeal approach" to valuing the property, the PTAB cited the testimony of both West and Rogers indicating that it would be incorrect to value only a portion of the property because that value would be affected by the other parcels.  The PTAB also noted that its decision to lower the assessed valuation in 1996 related to the office building alone, and the evidence and testimony at the current hearing were different.  The PTAB was also persuaded by Rogers' criticism of Mundie's failure to value the property as a banking facility.  The PTAB disregarded the sale and leaseback transaction that occurred in 2000 because it was not an arm's length transaction and did not reflect true market value.  The PTAB concluded that the value of the property as it had been assessed was fairly reflective of market value based on the property record cards, the testimony of Rogers and West, and Rogers' limited appraisal report.

Analysis

When conducting administrative review, a reviewing court accepts the agency's findings and conclusions on questions of fact as 
prima
 
facie
 true and correct.  735 ILCS 5/3--110 (West 1998).  A reviewing court is not to reweigh the evidence, reassess the credibility of the witnesses, or substitute its judgment for that of the agency.  
Residential Real Estate Co. v. Property Tax Appeal Board
, 188 Ill. App. 3d 232, 543 N.E.2d 1358 (1989).  The scope of review is limited to determining whether the administrative agency's findings are against the manifest weight of the evidence.  See 
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 606 N.E.2d 1111 (1992).  A reviewing court is not justified in reversing an administrative agency merely because it might have ruled differently or because another conclusion is reasonable (
Abrahamson
, 153 Ill. 2d 76, 606 N.E.2d 1111); a finding is against the manifest weight of the evidence when all reasonable and unbiased persons would agree that the opposite conclusion is clearly evident (
La Salle Partners, Inc. v. Illinois Property Tax Appeal Board
, 269 Ill. App. 3d 621, 646 N.E.2d 935 (1995)).  The party contesting an assessment bears the burden of going forward; it must provide substantive, documentary evidence or legal argument sufficient to challenge the correctness of the assessment.  86 Ill. Adm. Code. §§1910.63(a), (b) (2001).  When market value is the basis of an appeal to the PTAB, the value of the property must be proved by a preponderance of the evidence.  
Winnebago County Board of Review v. Property Tax Appeal Board
, 313 Ill. App. 3d 179, 728 N.E.2d 1256 (2000.)

Petitioner contends that the PTAB's decision is against the manifest weight of the evidence because it completely disregarded Mundie's appraisal and testimony while placing undue reliance on Rogers' opinions, which were unsupported by any documented market data or income analysis.  Petitioner also complains that the PTAB gave no deference to its 1996 decision lowering the assessed valuation of the office building.

Of course, determining the weight of the evidence and the credibility of the witnesses is uniquely within the province of the administrative agency, and a mere difference of opinion concerning value is not a sufficient basis to disturb the PTAB's decision.  See 
LaSalle Partners
, 269 Ill. App. 3d 621, 646 N.E.2d 935; see also 
Edward Rose Building Co. v. Illinois Property Tax Appeal Board
, 216 Ill. App. 3d 1063, 576 N.E.2d 572 (1991).  In this case the PTAB was amply justified in giving little weight to Mundie's appraisal since it valued only a part of the property.  Both Rogers and West testified that the drive-up banking facility, parking garage and other property not included in Mundie's appraisal could affect the value of the office building.  As succinctly stated by the PTAB, "[w]ithout expert testimony and sufficient evidence to support [that] testimony, the [PTAB] finds it cannot change the assessment of the whole property based on evidence pertaining only to a part."  

Nor do we find any error by the PTAB in rejecting a "piecemeal approach" by which petitioner sought to challenge only the valuation of the office building while leaving the value of the remainder of the property undisturbed.  In 
Showplace Theater Co. v. Property Tax Appeal Board
, 145 Ill. App. 3d 774, 495 N.E.2d 1312 (1986), the taxpayer appealed from the valuation of its land only, not the improvements.  The PTAB granted a reduction in the valuation of the land, but increased the valuation of the improvements.  The taxpayer argued, and the circuit court found, that the PTAB lacked jurisdiction to increase the value of the improvements because the taxpayer had specifically designated that it was only appealing the value of the land.  On appeal, this court found that an appeal to the PTAB includes both the land and the improvements, and "together those assessed values constitute a single assessment of the property."  
Showplace Theater
, 145 Ill. App. 3d at 776, 495 N.E.2d at 1314.  Similarly in this case, petitioner's appeal put at issue the valuation of the 
entire
 property, not merely a portion selected by petitioner.  
Cf
. 
Department of Transportation v. First Bank of Schaumburg
, 260 Ill. App. 3d 490, 631 N.E.2d 1145 (1992) (in eminent domain proceeding, value of property must be considered as a whole, not as the sum of its component parts).  Petitioner's failure to present evidence of the value of the property as a whole substantially impacted the evidentiary value of Mundie's appraisal.

In further support of its manifest weight argument, petitioner notes that there was "considerable" testimony about the transfer of ownership of the property in 2000.  However, as petitioner itself acknowledges, "it remains unclear from the record as to what portion of the property was actually transferred."  Furthermore, West testified that the transfer was a sale and leaseback, which was not considered an arm's length transaction.  Under the circumstances, the PTAB could properly disregard such evidence.  See 
Residential Real Estate Co.
, 188 Ill. App. 3d 232, 543 N.E.2d 1358 (transaction not at arm's length may not establish value without further information).

Finally, petitioner asserts that it did not receive a fair hearing because the PTAB relied on the undocumented opinion and testimony of Rogers, in violation of the Illinois Administrative Code, which states:

"Appraisal testimony offered to prove the valuation asserted by any party shall not be accepted at the hearing unless a documented appraisal has been timely submitted by that party pursuant to this Part.  Appraisal testimony offered to prove the valuation asserted may only be given by a preparer of the documented appraisal whose signature appears thereon."  86 Ill. Adm. Code §1910.67(l) (2001).

Rogers' "limited restricted" appraisal report stated that he inspected the property, obtained the property record card from the assessor's office containing building dimensions, age and other information, and he was provided with two full appraisal reports by two different appraisers.  In addition, Rogers collected data of comparable building rents, sales, and capitalization rates and applied the income capitalization and sales comparison approaches to value.  According to the report, "[t]he comparable sales and the detailed results of these approaches were retained in [Rogers'] backup file since this is an abbreviated restricted report."  We need not determine whether such a "limited restricted" appraisal report is a "documented appraisal" within the meaning of the Administrative Code because petitioner failed to object to the report or to Rogers' testimony.  "It is axiomatic that if an argument or objection is not made in an administrative proceeding, it is waived and may not be raised for the first time on administrative review."  
LaSalle Partners
, 269 Ill. App. 3d at 631, 646 N.E.2d at 942.  For the same reason, petitioner's argument that the absence of documentation in Rogers' report prevented it from effectively cross-examining Rogers is also waived.

For the reasons stated above, the decision of the Property Tax Appeal Board is affirmed.

Affirmed.

HOLDRIDGE and HOMER, JJ., concurring.