RUTH PEACOCK et al., Plaintiffs-Appellants, v. THE PROPERTY TAX APPEAL BOARD et al., Defendants-Appellees.

Fourth District   No. 4—02—0554

Argued April 22, 2003.—Opinion filed June 20, 2003.

George J. Lewis (argued) and Jason P. Stone, both of Lewis & Longlett, of Quincy, for appellants.

Lisa Madigan, Attorney General, of Chicago (John P. Schmidt (argued), Assistant Attorney General, of counsel), for appellees Property Tax Appeal Board and Max Coffey.

Michael A. Bickhaus (argued) and Melinda S. Madison, both of Schmiedeskamp, Robertson, Neu & Mitchell, of Quincy, for appellee Board of Education of Community Unit School District No. 3.

James A. Rapp, of Hutmacher & Rapp, P.C., of Quincy, for appellees Board of Education of Community Unit School District No. 337 and Board of Education of Community Unit School District No. 4.

JUSTICE STEIGMANN delivered the opinion of the court:

Plaintiffs Ruth Peacock, Pierce Farms, Inc. (Pierce Farms), Stephen Acres, Inc. (Stephen Acres), Courtney Stephens, Margaret Stephens, Raymond Lippert, and General Bank Trust (General Bank) appealed their property tax assessments to the Illinois Property Tax Appeal Board (Board). The Board consolidated plaintiffs' appeals for

hearing purposes. In July 1998, the Board granted partial relief to Stephen Acres and General Bank but otherwise denied plaintiffs' appeals.

Later in July 1998, plaintiffs filed a complaint in the circuit court, seeking administrative review of the Board's decision, and in addition to the Board, named as defendants the following parties: Max Coffey, as Chairman of the Board; the County of Adams, in and for the State of Illinois; the Adams County Board of Review (Review Board); the Board of Education of Community Unit School District No. 3, Adams County, Illinois; the Board of Education of Community Unit School District No. 337, Counties of Hancock, Adams, and Schuyler, Illinois; and the Board of Education of Community Unit School District No. 4, Counties of Adams and Hancock, Illinois.

In November 1999, the circuit court dismissed plaintiffs' complaint, pursuant to section 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 1998)). Plaintiffs appealed, and this court reversed and remanded. *Peacock v. Property Tax Appeal Board*, No. 4—00—0162 (November 30, 2000) (unpublished order under Supreme Court Rule 23).

On remand, following hearings in March and June 2002, the circuit court reviewed the Board's decisions and affirmed them.

Plaintiffs appeal, arguing that the circuit court's judgment was against the manifest weight of the evidence. We affirm in part, reverse in part, and remand with directions.

## I. BACKGROUND

This consolidated case involves the following property tax appeals: (1) Courtney and Margaret appealed the property taxes on their home in Golden (the Stephens home) for the years 1987 through 1997; (2) Stephen Acres appealed the assessments for improvements on its farm property (the Stephen Acres farm) for the years 1987 through 1997; (3) Peacock appealed the property taxes on her home in Quincy (the Peacock home) for the years 1987 through 1990; (4) Pierce Farms appealed the assessments for improvements on its farm property (the Pierce farm) for the years 1991 and 1992; (5) General Bank appealed the assessments for improvements on its three properties (the Bank properties) for the years 1986 through 1990; and (6) Lippert appealed the property taxes on the Bank properties for 1985, the year in which he owned them (collectively, the subject properties). Specifically, plaintiffs alleged that (1) their properties and improvements thereon were not assessed at the same percentage proportion to fair cash value as other properties in Adams County; and (2) the farm outbuildings on plaintiffs' properties were not assessed on the basis of their current use contribution to the productivity of the farms, as is required under

section 10—140 of the Property Tax Code (35 ILCS 200/10—140 (West 1998)).

In May 1998, a Board hearing officer conducted a hearing on plaintiffs' consolidated cases. Because the parties are familiar with the evidence presented at the May 1998 hearing, we review it only to the extent necessary to put plaintiffs' arguments in context.

### A. Assessment Ratio Evidence

William Cornwell testified that he had been a licensed real estate broker since 1963 and was an experienced appraiser. Cornwell appraised all of the subject properties and the properties that he described as "comparables." The comparables had been chosen by Courtney.

Evidence showed that Courtney used the comparables to create a document entitled "Appellants' Assessment Ratio Studies," which was admitted into evidence. Courtney's study covered the years 1985 through 1997 and included between 9 and 19 comparables for each year. The study showed the fair market value of the comparables for each year based on either Cornwell's appraisals or a recent sale of the property if one was available. The study also showed the assessed valuations for each of the comparables. Under a column titled "ratio," the study purported to show the percentage of fair market value at which each property was assessed. The study also showed an average percentage for all of the comparables.

Courtney testified as follows regarding how he chose the comparables used in his study: "I just went through the records of the assessor's office and chose them based on the figures I found there." He acknowledged that he did not randomly select the comparables, but chose specific properties. Courtney's only criterion for selecting a property to be used as a comparable was that it had been assessed low. He did not consider whether the properties to be used as comparables were similar to the subject properties.

According to Courtney's study, the ratio of assessment to estimated market value of the comparables for the relevant time period averaged from 7.88% to 18.22%. For the same time period, the ratio of assessment to estimated market value of the subject properties ranged from 32.21% to 77.50%. (Pursuant to section 9—145 of the Property Tax Code, property shall be assessed at $33^{1}/_{3}\%$ of its fair cash value. 35 ILCS 200/9—145 (West 2000).)

Georgene Zimmerman testified that she had been the Adams County supervisor of assessments since 1990 and the deputy supervisor of assessments for many years before that. Zimmerman created her own assessment ratio study by taking all "usable sales" that took

place in the multi-township assessment district of Houston and Northeast Townships and comparing the sales prices to the properties' assessed values. "Usable sales" were those that were arm's length and were not executor's deeds, quitclaim deeds, splits, or farmland sales. Zimmerman summarized her data in a manner similar to that used by Courtney. Her chart included some of Courtney's comparables in addition to others; she used all of the available sales for the given year. Zimmerman did not choose only the highest sales.

Zimmerman further testified that on Courtney's 1997 chart, in three instances, the sale price used was for a 1997 sale of a residence, but the assessment for that year was for a lot only. Thus, the numbers showed a low percentage ratio assessment. In a separate instance, the assessment did not reflect what was actually sold due to a split of existing parcels. In another instance, one of Courtney's comparables was a "10-30" assessment, which reflects an assessment rate temporarily granted to a developer until a lot is sold or developed. Such assessments are "special" and not based on fair market value.

### B. Evidence on the Valuation of Farm Outbuildings

Cornwell testified that he appraised the farm outbuildings on the subject properties by determining the value of their contribution to farm productivity. He determined the value of farm buildings to farm productivity based on his experience and his observations of the subject properties. He described his relevant experience as follows: He was raised on a farm and had owned farms. After he went into the real estate business, he acquired and operated several farms that had farm outbuildings. Cornwell said he ascertained the value of the properties merely by looking at them and deciding what they were worth based on his experience.

Dennis Grimm testified that he had been a licensed real estate broker in Illinois since 1976 and Quincy's deputy tax assessor since 1978. Grimm explained how he appraised the farm buildings on the Stephen Acres farm as follows: "Well, having not a lot of experience in that sort of thing, what I did was I drew on the experience of others that are in that business, local appraisers, once again, local [r]ealtors that are in the Golden area that are familiar with farming and that property." He also talked to local lenders that do a large amount of farm lending.

Grimm further testified that when he appraised the farm outbuildings on the subject properties, he did so by determining the replacement cost of the building and subtracting appropriate depreciation in accordance with the requirements of the Illinois Real Property Appraisal Manual (Appraisal Manual). When asked whether he valued

the farm outbuildings based upon their current use and their contribution to the productivity of the farm, Grimm answered, "I guess I did not."

Roy Points testified that he had been the Quincy township assessor since 1990. From 1980 to 1990, he was the Adams County supervisor of assessments. Points acknowledged that under the law, farm outbuildings should be assessed pursuant to Illinois Department of Revenue guidelines, which state that such buildings should be assessed according to contributory value. The Appraisal Manual provides that farm outbuildings are to be assessed on a cost approach "with a determination based on how they're used to reflect obsolescence, whether there's any functional obsolescence or not." Thus, the cost approach is only a starting point.

Points further acknowledged that the Board's information pamphlet provides as follows:

"Farm outbuildings are improvements on the farm such as housing for animals or machinery and storage for feed and grain. These structures are assessed at 33 and a third percent of their contributory value to the productivity of the farm. Contributory value considers the current use of the improvements and what that use adds to the overall productivity of the farming operation. This part of the farm property assessment is subject only to county board of review factor."

## C. The Board's Decisions

The Board rejected plaintiffs' claims that their properties were unfairly assessed at a higher assessment to market value ratio than other properties in Adams County. In its written decisions on each of plaintiffs' appeals, the Board accorded little weight to Courtney's assessment to market value ratio study because (1) the study used Cornwell's appraisals, which were based solely on his experience and not supported by comparable sales or market value documentation; and (2) Courtney testified that he selected the comparables based on their low assessments.

As to plaintiffs' claims that farm outbuildings had not been properly assessed, the Board granted partial relief to Stephen Acres and General Bank, upon determining that some of their properties had been overvalued. Specifically, the Board determined that (1) Stephen Acres was entitled to a reduction for farm improvements for the 1989 assessment year; (2) General Bank was entitled to reductions on a parcel including a residence and farm improvements for the years 1985 and 1986; and (3) General Bank was entitled to reductions on another parcel, including farm outbuildings for the years 1988 through 1990.

In July 1998, plaintiffs filed a complaint in the circuit court, seeking administrative review of the Board's decisions, and the court dismissed plaintiffs' complaint. Plaintiffs appealed, arguing in pertinent part that (1) the Administrative Review Law (735 ILCS 5/3—101 through 3—113 (West 1998)) does not require plaintiffs to request issuance of a summons to each defendant; and (2) their failure to cause summons to issue to each defendant should be excused because they made a good-faith effort to comply with the relevant provisions of the Administrative Review Law. This court agreed with plaintiffs and reversed. *Peacock v. Property Tax Appeal Board*, No. 4—00—0162 (November 30, 2000) (unpublished order under Supreme Court Rule 23). Following remand, the court conducted hearings on plaintiffs' complaint, and in a March 22, 2002, written order, the court affirmed the Board's decisions. Specifically, the court found that the Board's acceptance of the evidence presented by the Review Board over plaintiffs' expert testimony was neither contrary to statutory requirements nor against the manifest weight of the evidence. This appeal followed.

## II. ANALYSIS

### A. Jurisdiction

As a threshold matter, we first address defendant school districts' argument that both the circuit court and this court lack jurisdiction over them because following this court's November 2000 remand, they were not properly served with a summons. We disagree.

■ This issue was addressed at some length in the first appeal of this case. *Peacock v. Property Tax Appeal Board*, No. 4—00—0162 (November 30, 2000) (unpublished order under Supreme Court Rule 23). In our November 2000 order, we rejected the school districts' arguments and held that (1) plaintiffs had complied with the requirements of section 3—105 of the Administrative Review Law (735 ILCS 5/3—105 (West 1998)); and (2) the circuit court should not have dismissed plaintiffs' complaint. Our order did not require that plaintiffs take any further action on remand, and we adhere to that decision.

We further reject the school districts' remaining arguments regarding personal jurisdiction. As of November 17, 1999, all defendants had made general appearances in the circuit court and thus cannot now challenge the court's jurisdiction. See *In re Possession & Control of the Commissioner of Banks & Real Estate of Independent Trust Corp.*, 327 Ill. App. 3d 441, 464, 764 N.E.2d 66, 87 (2001) ("If a party participates in the proceeding on its merits, even after a special appearance has been filed, that party waives the special appearance and jurisdictional

challenge when he takes such affirmative action dealing with substantive issues thereby amounting to a general appearance and submitting himself to the jurisdiction of the court").

## B. Standard of Review

■ Appeals from the Board are governed by the Administrative Review Law. 35 ILCS 200/16—195 (West 2000). Under the Administrative Review Law, we review the administrative agency's decision and not the circuit court's determination. *XL Disposal Corp. v. Zehnder*, 304 Ill. App. 3d 202, 207, 709 N.E.2d 293, 297 (1999). When conducting such review, we accept the administrative agency's findings and conclusions on questions of fact as *prima facie* true and correct. Our review is limited to determining whether the agency's findings are against the manifest weight of the evidence, which means that "all reasonable and unbiased persons would agree that the opposite conclusion is clearly evident." *National City Bank of Michigan/Illinois v. Property Tax Appeal Board*, 331 Ill. App. 3d 1038, 1042, 780 N.E.2d 691, 695 (2002).

■ Section 1910 of Title 86 of the Illinois Administrative Code (Administrative Code) governs the practice and procedure for hearings before the Board. 86 Ill. Adm. Code § 1910 (Conway Greene CD-ROM December 1998). Pursuant to section 1910.63(b) of Title 86 of the Administrative Code, "[u]nder the burden of going forward, the contesting party must provide substantive, documentary evidence or legal argument challenging the correctness of the assessment of the subject property. Failure to do so will result in the dismissal of the appeal." 86 Ill. Adm. Code § 1910.63(b) (Conway Greene CD-ROM December 1998). Section 1910.63(c) of Title 86 of the Administrative Code further provides as follows:

> "Once a contesting party has provided evidence or argument sufficient to challenge the correctness of the assessment of the subject property, the [b]oard of [r]eview shall be required to go forward with the appeal. The [b]oard of [r]eview must provide substantive, documentary evidence or legal argument sufficient to support its assessment of the subject property or some other, alternate valuation. Failure to do so will result in a decision by the Property Tax Appeal Board based upon the information submitted by the contesting party and, if applicable, the evidence submitted by any intervening party." 86 Ill. Adm. Code § 1910.63(c) (Conway Greene CD-ROM December 1998).

## C. Plaintiffs' Uniformity Challenge

Plaintiffs first argue that the Board's finding that they failed to prove lack of uniformity of their assessments was against the manifest

weight of the evidence. Specifically, they contend that (1) Courtney's assessment ratio study was not flawed; (2) Cornwell's appraisals were reliable; (3) the Review Board did not put on sufficient evidence for the years 1985 through 1989; and (4) the Board improperly considered the three-year median levels of assessment as determined by the Illinois Department of Revenue. We disagree.

■ In *Walsh v. Property Tax Appeal Board*, 181 Ill. 2d 228, 234, 692 N.E.2d 260, 262 (1998), our supreme court discussed the uniformity requirement as follows:

"The Illinois property tax scheme is grounded in article IX, section 4, of the Illinois Constitution of 1970, which provides in pertinent part that real estate taxes 'shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law.' Ill. Const. 1970, art. IX, § 4(a). Uniformity requires equality in the burden of taxation. [Citation.] This, in turn, requires equality of taxation in proportion to the value of the property taxed. [Citation.] Thus, taxing officials may not value the same kinds of properties within the same taxing boundary at different proportions of their true value. [Citation.] The party objecting to an assessment on lack of uniformity grounds bears the burden of proving the disparity by clear and convincing evidence."

### 1. *Courtney's Assessment Ratio Study*

Plaintiffs first contend that Courtney's assessment ratio study was not flawed because it was not necessary that the comparables used in an assessment ratio study be similar to the subject property. We disagree.

■ A uniformity violation can be established through evidence regarding the assessed valuations of a small number of properties. *Du Page County Board of Review v. Property Tax Appeal Board*, 284 Ill. App. 3d 649, 655, 672 N.E.2d 1309, 1313 (1996). However, the properties selected for comparison must be similar in kind and character and must be similarly situated to the subject property. *Du Page County Board of Review*, 284 Ill. App. 3d at 654, 672 N.E.2d at 1313.

■ We agree with the Board that Courtney's study was fatally flawed. Courtney acknowledged that he handpicked comparables that appeared to have been assessed low, and he did not consider whether those properties were (1) of a similar kind or character, or (2) similarly situated to the subject properties. His study did not represent a random sampling of like properties that could in any way be viewed as representative of the county's assessments as a whole. At most, Courtney's data showed that instances exist in which particular properties were undervalued. The law does not require "absolute equality" in taxation. See *Schreiber v. County of Cook*, 388 Ill. 297, 303, 58 N.E.2d

40, 43 (1944) ("Perfect equality and uniformity of taxation as regards individuals or corporations or different classes of property subject to taxation can hardly be visualized. Absolute equality is impracticable in taxation and is not required by the equal protection clause of the constitution. Inequalities that result occasionally and incidentally in the application of a system that is not arbitrary in its classification, and not applied in a hostile and discriminatory manner, are not sufficient to defeat the tax"); *Apex Motor Fuel Co. v. Barrett*, 20 Ill. 2d 395, 401, 169 N.E.2d 769, 773 (1960) (the constitutional uniformity requirement is satisfied if the taxing body achieves a reasonable degree of uniformity). It is difficult to imagine a context in which a study would be deemed valid where the author of the study chooses the subjects based on the result he seeks to prove.

Courtney's study was further discredited by Zimmerman's testimony showing that Courtney did not sufficiently cull the comparables to remove anomalies. In light of the aforementioned infirmities, the Board was entitled to accord little weight to Courtney's assessment ratio study.

### 2. *Plaintiffs' Remaining Arguments*

Plaintiffs also contend that the Board's finding was against the manifest weight of the evidence because (1) Cornwell's appraisals were reliable; (2) the review board did not put on sufficient evidence for the years 1985 through 1989; and (3) the Board improperly considered the three-year median levels of assessment as determined by the Illinois Department of Revenue. We disagree.

Even assuming, *arguendo*, that plaintiffs' arguments have merit, they still could not have overcome the burden of showing by clear and convincing evidence that their properties had not been assessed in uniformity with other like properties in the county. *Du Page County Board of Review*, 284 Ill. App. 3d at 652, 672 N.E.2d at 1311. Given that plaintiffs' only evidence showing the alleged lack of uniformity was fatally flawed, they could not have prevailed.

■ As to plaintiffs' contention that the Board improperly considered assessment data compiled by the Illinois Department of Revenue, we note that section 1910.50(c)(1) of Title 86 of the Administrative Code provides as follows:

"In all counties other than Cook, a three-year county[-]wide assessment level to be based on relevant sales during the previous three years as certified by the Department of Revenue will be considered where sufficient probative evidence is presented indicating the estimate of full market value of the subject property on the relevant real property assessment date of January 1." 86 Ill. Adm. Code § 1910.50(c)(1) (Conway Greene CD-ROM December 1998).

Thus, the Board was entitled to consider the Department of Revenue figures, and the recent holding of the First District Appellate Court in *Cook County Board of Review v. Property Tax Appeal Board*, 339 Ill. App. 3d 529 (2002) (holding that the Property Tax Appeal Board improperly considered Department of Revenue figures that had not been introduced in evidence), does not require a different result.

Moreover, as the Board points out, plaintiffs did not object to the Board's consideration of the Department of Revenue data during either the hearing before the Board or in the circuit court. Thus, the matter is forfeited. See *James L. Hafele & Associates v. Department of Employment Security*, 308 Ill. App. 3d 983, 987-88, 721 N.E.2d 782, 786 (1999).

### D. Assessment of Farm Outbuildings

Plaintiffs next argue that the Board erred by failing to adopt Cornwell's appraisals as the correct valuation of the subject farm buildings. We agree.

#### 1. *Burden of Proof and Standard of Review*

■ As the Board points out, the Review Board claimed that plaintiffs were required to prove an overvaluation of their property by clear and convincing evidence, citing *Illini Country Club v. Property Tax Appeal Board*, 263 Ill. App. 3d 410, 416, 635 N.E.2d 1347, 1352 (1994). However, plaintiffs contend, and the Board concedes, that (1) in *Illini Country Club*, where the plaintiffs claimed their property was excessively assessed, this court erroneously cited the burden of proof applicable to challenges based on lack of uniformity; and (2) pursuant to section 1910.63(e) of Title 86 of the Administrative Code, "[w]hen market value is the basis of the appeal, the value of the subject property must be proved by a preponderance of the evidence." 86 Ill. Adm. Code § 1910.63(e) (Conway Greene CD-ROM December 1998); see also *Winnebago County Board of Review v. Property Tax Appeal Board*, 313 Ill. App. 3d 179, 183, 728 N.E.2d 1256, 1259-60 (2000); *National City Bank*, 331 Ill. App. 3d at 1042, 780 N.E.2d at 695. To the extent that *Illini Country Club* held otherwise, we overrule that decision and now hold that a plaintiff's claim of excessive assessment must be proved by a preponderance of the evidence.

#### 2. *Section 10—140 of the Property Tax Code*

■ Section 10—140 of the Property Tax Code provides, in pertinent part, that improvements on farm property (other than dwellings), including the structures at issue here, "shall have an equalized assessed value of 33¹/₃% of their value, based upon the current use of those buildings and their contribution to the productivity of the farm."

35 ILCS 200/10—140 (West 1998). In its written decisions, the Board cited this section of the Property Tax Code and reiterated its requirement that farm outbuildings be assessed based on contribution to the productivity of the farm.

In *O'Conner v. A&P Enterprises*, 81 Ill. 2d 260, 267-68, 408 N.E.2d 204, 207 (1980), the Supreme Court of Illinois discussed section 10—140 as follows:

> "[Section 10—140] is *** a recognition by the legislature that certain structures located on a farm may have become obsolete by changes in farming methods or practices, and either have a greatly diminished value, or possibly no value at all in connection with the farming operation when considered as a part of the farm as a whole. The corncrib, once an essential structure on every farm for the storage of ear corn, has become primarily a relic of the past, due to the almost universal practice of combining the corn and drying and storing it as shelled corn. Horse barns now stand idle due to the disappearance of the use of horses for the powering of farm machinery, and many dairy barns are no longer used because of the decrease in the number of small dairy herds. The legislature has provided that these buildings should be valued on the basis of their contribution to the farm operation. If they are used for either their intended purpose, or for a substitute purpose, the appropriate value can be placed on them. Section 1(25) of the Revenue Act of 1939 provides that these buildings shall continue to be valued as a part of the farm. If they contribute nothing to the productivity of the farm then, of course, the buildings would add nothing to the value of the farm. *** Just as a well that is no longer usable or a shade tree that is dead does not enhance the value of the farm, a barn or a corncrib that is not usable adds nothing to the value of a farm."

At the May 1998 hearing before the Board, Grimm testified that he had determined the value of the subject farm outbuildings by determining their cost and adjusting for depreciation. He specifically acknowledged that he did not consider the contribution of the improvements to farm productivity. Points acknowledged that under the law, farm outbuildings are to be assessed based on their contribution to farm productivity and the cost analysis provides a starting point for making such assessment. However, Points did not testify regarding the valuations of any of the subject properties.

The Review Board produced an appraiser's one-page review of its valuations of some of the subject farm outbuildings. The appraiser opined that the Review Board's market values were correct. However, the appraiser did not testify, and no evidence was presented showing his methodology or the basis for his conclusions.

■ We conclude that the Review Board failed to provide any

substantive, documentary evidence showing that its assessments of the subject farm outbuildings during the relevant time periods were performed in accordance with section 10—140 of the Property Tax Code. See 86 Ill. Adm. Code § 1910.63(c) (Conway Greene CD-ROM December 1998) ("The Board of Review must provide substantive, documentary evidence or legal argument sufficient to support its assessment of the subject property or some other, alternate valuation. Failure to do so will result in a decision by [the Board] based upon the information submitted by the contesting party ***"). Thus, pursuant to the above-cited section of the Administrative Code, the Board should have accepted plaintiffs' valuations of the subject farm outbuildings.

We appreciate the Board's concern that Cornwell's appraisals were not supported by documents or other evidence of precise calculations or methodology. However, Cornwell testified that he valued the subject farm outbuildings based on their contribution to farm productivity, and relied on his lifelong experience in real estate and farming to make that assessment. The Review Board provided no evidence that the subject farm outbuildings had been valued in accordance with section 10—140 of the Property Tax Code. We thus conclude that in those instances where the Board upheld the Review Board's valuations of the subject farm outbuildings, its decision was against the manifest weight of the evidence.

Accordingly, we reverse the Board's decisions upholding the Review Board's valuations of plaintiffs' farm outbuildings and remand with directions that the Board adopt plaintiffs' valuations, pursuant to section 1910.63(c) of Title 86 of the Administrative Code (86 Ill. Adm. Code § 1910.63(c) (Conway Greene CD-ROM December 1998)).

## III. CONCLUSION

For the reasons stated, we affirm in part, reverse in part, and remand for further proceedings consistent with the views expressed herein.

Affirmed in part and reversed in part; cause remanded with directions.

MYERSCOUGH, P.J., and TURNER, J., concur.