# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Kankakee County Board of Review v. Property Tax Appeal Board,**
**2012 IL App (3d) 110045**

---

| | |
|---|---|
| Appellate Court Caption | THE KANKAKEE COUNTY BOARD OF REVIEW, Petitioner, v. THE PROPERTY TAX APPEAL BOARD and ARMSTRONG WORLD INDUSTRIES, Respondents. |
| District & No. | Third District <br> Docket No. 3-11-0045 |
| Filed | May 7, 2012 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Illinois Property Tax Appeal Board's reduction of the assessed value of an old and somewhat unique industrial complex was affirmed, notwithstanding the county's contentions that the Board erred in relying on sale values from out-of-market properties and in rejecting the county's appraisal based on multitenant leases and concluding that sales involving such leases required downward adjustments, since nonleased properties provided a better indicator of the subject property's value, relying on the adjusted value of those properties in fixing the value of the subject property was not against the manifest weight of the evidence, and the reliance on values of out-of-market properties was supported by testimony that the distance to the subject property was not a factor in valuation. |
| Decision Under Review | Petition for review of order of Illinois Property Tax Appeal Board, No. 06-1787.001-I-3. |

| | |
|---|---|
| Judgment | Confirmed. |
| Counsel on Appeal | John J. Boyd, State's Attorney, of Kankakee (Theresa Kubalanza, Assistant State's Attorney, of counsel), and Frederic S. Lane, Scott L. Ginsburg, and Kenneth M. Florey (argued), all of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Chicago, for appellant. |
| | Lisa Madigan, Attorney General, of Chicago (Ann C. Maskaleris (argued), Assistant Attorney General, of counsel), for appellee Illinois Property Tax Appeal Board. |
| | Peter Verros, of Verros, Lafakis & Berkshire, P.C., of Chicago, for appellee Armstrong World Industries. |
| Panel | PRESIDING JUSTICE SCHMIDT delivered the judgment of the court, with opinion. |
| | Justices Lytton and McDade concurred in the judgment and opinion. |

## OPINION

¶ 1    The Kankakee County Board of Review (the County) appeals the decision of the Illinois Property Tax Appeal Board (PTAB). Armstrong World Industries (Armstrong) filed a real property assessment appeal with the PTAB, seeking reduction of the County's assessed value of a property parcel for the 2006 tax year. The PTAB issued a decision granting Armstrong's reduction, lowering the assessed value from $2,884,281 to $1,326,600. The County filed a petition for direct review pursuant to section 16-195 of the Property Tax Code (the Code) (35 ILCS 200/16-195 (West 2008)) and section 3-113 of the Illinois Code of Civil Procedure (735 ILCS 5/3-113 (West 2008)). The County claims the PTAB erred, *inter alia*: (1) in rejecting the County's appraisal based upon multitenant leases; (2) in concluding that sales involving multitenant leases require downward adjustments; and (3) by relying on sale values from out-of-market properties. While arguing numerous points, the gravamen of the County's appeal is that the PTAB erred in valuing the property when it assigned greater weight to the opinion of Armstrong's appraiser than to those of the County's experts. We confirm the decision of the PTAB.

¶ 2                                    BACKGROUND

¶ 3    The property at issue is a large, old and somewhat unique industrial complex located in Kankakee County. Armstrong uses the facility to manufacture floor tiles, employing a fairly uncommon vertical manufacturing approach. This vertical process requires a very tall

facility, which would not be useful for many potential industrial users. Armstrong has been the facility's sole owner and user since construction. Numerous additions have resulted in a complex comprised of multiple buildings encompassing more than 395,000 square feet.

¶ 4 On March 8, 2007, the County issued a final decision on assessed value for the 2006 tax year for the Armstrong parcel, number 17-09-28-302-018. The County found the assessed value to be $2,884,281 (reflecting a market value of $8,609,794). On April 2, 2007, Armstrong filed a real estate tax appeal petition with the PTAB, claiming that the proper assessed value should have been $1,307,115 (reflecting a market value of $3,150,000). In support of its appeal, Armstrong submitted an appraisal prepared by J. Edward Salisbury of Salisbury & Associates, Inc. (Salisbury). In response to Armstrong's appeal, the County submitted an appraisal of the subject property prepared by Andrew Brorsen of Brorsen Appraisal Service, P.C. (Brorsen), as well as a review of Mr. Salisbury's appraisal performed by Richard Buchaniec of Buchaniec & Company (Buchaniec).

¶ 5 Salisbury, Brorsen and Buchaniec all testified at a March 10, 2010, PTAB hearing. All three experts agreed that the sales comparison approach was the proper valuation method for the subject property. Buchaniec did not express any opinion of value, as he only performed an appraisal review.

¶ 6 Mr. Salisbury, Armstrong's expert, testified that he relied upon five sales comparables to determine the value of the subject property. He did not consider properties where a significant portion was leased at the time of sale as such properties would be dissimilar to the subject property and, therefore, not comparable. Thus, none of Salisbury's comparables were leased at the time of sale (each instead conveying unencumbered ownership). Prior to being retained by Armstrong, he had either visited or appraised three of his comparables or their surrounding properties. The five Salisbury comparable properties sold between May 2003 and December 2005, with prices ranging from $750,000 to $2.1 million, or $2.91 to $8.10 per square foot. The properties ranged in size from 201,900 to 685,620 square feet and ranged in weighted age from 25 to 61 years. Salisbury opined that three features negatively affected the subject property: its 40-year weighted age, its construction in stages via multiple additions and its rack warehouse system, which he believed would not be useful for many potential buyers. Under the cost approach, Salisbury concluded that the subject property had a fair market value of $2.9 million. Under the sales comparison approach, Salisbury found the subject property had a fair market value of $3.15 million, or $8 per square foot.

¶ 7 Next, Mr. Buchaniec testified for the County regarding his review of Salisbury's appraisal. Buchaniec expressed concern regarding Salisbury's comparable sales. He challenged the accuracy of Salisbury's appraisal, given the distance of the comparable sales to the subject property as well as the degree of adjustment those properties required. However, Buchaniec acknowledged that distance to the subject property is not a factor in valuation. Buchaniec agreed with Salisbury that the property was unique given its age, size and multistory nature. This complicated the task of finding suitable comparable sales. Buchaniec opined that the only reason he could see for Salisbury to use his chosen comparable sales was if it was "handy for him" because "he just had them in his file." While Buchaniec made an effort to identify similar properties in neighboring Will County, he acknowledged that he made no effort to determine whether these properties were actually

comparable to the subject property. Buchaniec would have used comparable sales located closer to the subject property, but acknowledged that the best method of sales comparison evaluation (though cost prohibitive) would be "to do a mini appraisal" of each comparable sale. Buchaniec ultimately believed Salisbury was intentionally using low value comparable sales. However, he admitted that he had neither analyzed Salisbury's comparable sales nor made an effort to verify the data from Salisbury's comparable sales.

¶ 8    Finally, Mr. Brorsen testified for the County that he analyzed data associated with six properties to determine the value of the subject property. These six properties sold between September 2000 and June 2006, with prices ranging from $2.1 million to $15 million, or $12.27 to $26.79 per square foot. All of the sales were within 55 miles of the subject property, ranging in size from 100,000 to 560,000 square feet with a weighted age from 31 to 66 years. Five of the sales were multitenant properties leased at the time of sale. Brorsen did not rely on information from the sixth sale as it occurred years prior to the 2006 tax assessment of Armstrong's property. Four of the properties were 90% to 100% leased at the time of sale. Brorsen claimed that the fact that a property was leased has no effect on its sale price as properties "in excess of 200,000 square feet seldom are leased to a single tenant." Brorsen ultimately determined that the subject property had a value of $10.4 million under the cost approach and $8.6 million under the sales comparison approach.

¶ 9    The PTAB issued a final administrative decision on December 23, 2010. It found that Brorsen's determination of the sales comparison approach was deficient, as four of his six comparable sales were "dissimilar to the subject's single user configuration" given their multitenant nature. According to the PTAB, the use of multitenant buildings "runs counter to Brorsen's highest and best use determination of the subject as improved," and Brorsen, therefore, should have made an adjustment for the leased properties. Furthermore, Brorsen provided no information regarding the lease terms, length or other details for any comparable sale. The PTAB found that Brorsen was not credible when he stated that "being leased does not have an impact on the sale" particularly given Brorsen's statement that one of his comparable properties was purchased "as an investment." The PTAB found Salisbury's comparables, which were unencumbered at the time of sale, "to be more indicative of market value than [Brorsen's] sales of fully leased properties."

¶ 10   With regard to Salisbury's appraisal, the PTAB gave the most weight to a property in Watseka, finding it evinced "a market more similar to the subject's market area." It noted the Watseka property required upward adjustment for location, time and market conditions. This comparable sold for $8.10 per square foot. Ultimately, the PTAB found the proper assessed value of the subject property to be $10 per square foot for a total assessed value of $1,326,600, which equates to a fair market value of $3,960,000. This direct review followed.

¶ 11                              ANALYSIS
¶ 12   When reviewing a decision of the PTAB, we accept its findings and conclusions on questions of fact as *prima facie* true and correct. *Peacock v. Property Tax Appeal Board*, 339 Ill. App. 3d 1060, 1068 (2003); *Illini Country Club v. Property Tax Appeal Board*, 263 Ill. App. 3d 410, 417 (1994). Our review is limited to determining whether the agency's findings

are against the manifest weight of the evidence, which means that "all reasonable and unbiased persons would agree that the opposite conclusion is clearly evident." *National City Bank of Michigan/Illinois v. Property Tax Appeal Board*, 331 Ill. App. 3d 1038, 1042 (2002). When faced with challenges to a PTAB decision reducing a taxpayer's assessment, courts have noted that "we are not charged with the responsibility of determining the market value of the subject property. Rather, the central question before us is whether the PTAB's decision to reduce petitioner's tax assessments *** was correct." *Kankakee County Board of Review v. Property Tax Appeal Board*, 226 Ill. 2d 36, 50 (2007); *Cook County Board of Review v. Property Tax Appeal Board*, 384 Ill. App. 3d 472, 479 (2008).

¶ 13    The *Illini Country Club* court addressed an issue similar to the one before us. Taxpayers offered comparable properties in support of their assessment, and the county board of review countered with its own comparables. *Illini Country Club*, 263 Ill. App. 3d at 412-13. The *Illini Country Club* court stated that "in the case at bar, there is dispute over the fair cash value of the subject properties. The [PTAB] had to assess the credibility of the witnesses and resolve the conflicts in the evidence. Therefore, a question of fact based on the difference of opinion of the fair cash value is the issue here." *Id.* at 417. The court went on to note that "[i]f there is any evidence which fairly supports the agency's findings, the decision must be sustained on review." *Id.*

¶ 14    Similarly, in *Du Page County Board of Review v. Property Tax Appeal Board*, 284 Ill. App. 3d 649 (1996), the Du Page County Board of Review (Du Page Board) determined that the property owners' single-family residence had a fair market value of $385,073, equating to an assessed value of $127,960 for the 1991 tax year. The property owners filed an appeal with the PTAB, claiming the assessment was excessive compared with surrounding properties. *Id.* at 650. In support of their appeal, the property owners submitted an appraisal report, which relied, *inter alia*, on four comparable properties. *Id.* At the hearing, the owners' expert testified as to the comparability of the four properties as well as the adjustments required for each, ultimately concluding that the proper assessed value was $92,724. *Id.* at 650-51. The Du Page Board countered with experts who introduced a fifth comparable and emphasized the differences between the subject property and the four comparable properties used by the owners' expert. *Id.* at 651. The PTAB agreed with the property owners, lowering the assessed value from $127,960 to $110,740. *Id.* at 652.

¶ 15    The Du Page Board sought administrative review, claiming that the PTAB decision was legally erroneous. *Id.* It argued that a lack of uniform assessment must be proved by clear and convincing evidence and, therefore, "as a matter of law, four comparables taken from the same subdivision as the subject property cannot constitute clear and convincing evidence." *Id.* The *Du Page* court disagreed with the Du Page Board's suggestion that it review the matter *de novo*. *Id.* at 653.

¶ 16    Relying on *Illini Country Club*, the *Du Page* court noted that "[s]imilarly, here, the only issue is whether the PTAB placed the proper valuation on the property. The question whether the four comparable sales did or did not establish that the subject property was not uniformly assessed was a factual issue for the PTAB to resolve." *Id.* at 653-54.

¶ 17    Noting that "both parties presented expert testimony to the effect that the comparables

supported their respective valuations," the *Du Page* court found this required the PTAB "to assess the credibility of the witnesses and the weight of the evidence." *Id.* at 654. The court, again quoting from *Illini Country Club*, stated that "[i]f there is any evidence which fairly supports the agency's findings, the decision must be sustained on review." (Internal quotation marks omitted.) *Id.* at 655 (quoting *Illini Country Club*, 263 Ill. App. 3d at 417). For this reason, the court in *Du Page* held that the PTAB's weighing of comparables involved findings of fact which could not properly be reviewed *de novo*. *Du Page County*, 284 Ill. App. 3d at 655.

¶ 18    Likewise in the case before this court, the parties have each offered expert witness testimony regarding the suitability of comparable properties. This required the PTAB to assess witness credibility and weigh the evidence presented to it. As this court has previously noted, "determining the weight of the evidence and the credibility of the witnesses is uniquely within the province of the administrative agency, and a mere difference of opinion concerning value is not a sufficient basis to disturb the PTAB's decision." *National City Bank*, 331 Ill. App. 3d at 1043. Our review indicates the PTAB's decision is supported by testimonial evidence from both Salisbury and Buchaniec. Both testified that leased properties are less comparable to the subject property than nonleased properties. We find the PTAB did not err in concluding that nonleased properties were a better indicator of the subject property's value. As such, its reliance on the adjusted values of those properties, when fixing the fair market value of the subject property, is not against the manifest weight of the evidence as not "all reasonable and unbiased persons would agree that the opposite conclusion is clearly evident." *National City Bank*, 331 Ill. App. 3d at 1042.

¶ 19    The PTAB's reliance on sale values from out-of-market properties was the result of its assessment of witness credibility and weighing of evidence, which was supported by testimony from Buchaniec that distance to the subject property is not a factor in valuation. Its decision of value is not against the manifest weight of the evidence.

¶ 20                                CONCLUSION

¶ 21    For the reasons discussed above, the decision of the Property Tax Appeal Board is confirmed.

¶ 22    Confirmed.