2020 IL App (3d) 190397

Opinion filed November 30, 2020

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| EDWARD SIMS JR. TRUST, | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Henry County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | Appeal No. 3-19-0397 |
| THE HENRY COUNTY BOARD OF | ) | Circuit No. 18-MR-158 |
| REVIEW, THE ILLINOIS PROPERTY | ) | |
| TAX APPEAL BOARD, and TAMRA S. | ) | The Honorable |
| DYNES, | ) | Jeffrey W. O'Connor, |
| | ) | Judge, presiding. |
| Defendants-Appellees. | | |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Presiding Justice Lytton and Justice Schmidt concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, the Edward Sims Jr. Trust (Trust), filed a property tax appeal with defendant, the Illinois Property Tax Appeal Board (PTAB), seeking a reduction in the 2012 assessed value of certain farm property owned by the Trust. The Trust asserted in the tax appeal that one of the improvements on the property, a farm building, had been given too high of an assessed value by the local assessor. After conducting an evidentiary hearing, during which both sides submitted appraisals of the property, the PTAB denied the Trust's request for a reduction. The Trust filed a

complaint for administrative review, and the trial court affirmed the PTAB's ruling. The Trust appeals. We affirm the PTAB's decision.

¶ 2                              I. BACKGROUND

¶ 3          The Trust owned an approximately 224-acre parcel of farmland in Western Township, Henry County, Illinois. Located on that farmland were two improvements: a large pole barn/farm building and a grain bin. The farm building, which is the subject of this appeal, was built in 2011. It was approximately 20,700 square feet in size, had walls that were 20 feet high, had steel siding and a steel roof, and had electrical and water service. The farm building was divided into two sections. The first section was approximately 7700 square feet in size, was insulated and heated, had concrete floors, and contained a workshop area and an office area. The second section was approximately 13,000 square feet in size, was unheated, had gravel floors, and was used to store farm machinery. Both sections had multiple overhead doors and one or two walk-in doors.

¶ 4          The farm building was assessed for the first time by the local assessor in 2012. For that year, the assessor assigned the entire property (the farmland and the improvements) a total assessed value of $164,170, which consisted of an assessed value of $67,760 for the farmland and $96,410 for the two improvements ($93,831 for the farm building and $2579 for the grain bin).[1] As indicated by the assessed value that had been assigned, the farm building had been given a contributory value of $281,520 for property tax purposes. See 35 ILCS 200/10-140 (West 2012) (indicating that the assessed value of improvements on farmland is 33⅓% of their contributory value).

_____

[1] Although the assessment information initially provided in the record did not show a separate assessed value for each of the improvements on the property, that information was later provided in the hearing before the PTAB.

¶ 5    After the 2012 assessed values were assigned to the property, the Trust filed a property tax appeal with the Henry County Board of Review (Board) seeking a reduction. The Board denied the Trust's request.

¶ 6    In February or March 2013, the Trust appealed the Board's ruling to the PTAB and again sought a reduction in the assessed value of the property. In its appeal, the Trust again asserted that the farm building had been overvalued by the local assessor. The Board opposed the Trust's request for a reduction and asserted that the farm building had been properly assessed. Both sides submitted appraisal reports in support of their positions.

¶ 7    The Trust's appraisal was conducted by Michael Blean, an Illinois certified general real estate appraiser with 30 years of farming experience. To determine the contributory value of the farm building, Blean used the cost approach, which consisted of estimating the replacement cost new of the building and subtracting depreciation from that amount. Using a standard cost guide, Blean estimated the replacement cost of the Trust's farm building to be $406,944, not including the cost of site improvements.

¶ 8    To determine the amount of depreciation, Blean looked for comparable sales. Blean found one sale in a different county that he thought was a good comparison because it involved a farm building of similar size, age, and structure, although the sale had been court-ordered and the property had been sold through an online auction to one of the owner's relatives. Using certain known information from the comparable sale and elsewhere, Blean calculated or estimated the value of the comparable property's farmland, the contributory value of the comparable property's farm building (the total consideration paid for the comparable property as a whole minus what Blean had calculated to be the value of the comparable property's farmland), and the replacement cost of the comparable property's farm building. From that information, Blean

3

estimated that the comparable farm building had 87% depreciation (the replacement cost of the comparable farm building minus what Blean had estimated to be the contributory value of the comparable farm building with the answer converted to a percentage). Blean allocated that percentage into the following three categories: 24% physical obsolescence, 40% functional obsolescence, and 23% external obsolescence.[2] Blean did not state in his report, however, how he had determined what allocation percentages were appropriate or how he had estimated the replacement cost of the comparable farm building.

¶ 9　　　　After determining the depreciation percentages for all three categories of depreciation with regard to the comparable farm building, Blean used that information to estimate the depreciation percentages for the Trust's farm building. Blean estimated that the Trust's farm building had 0% depreciation for physical obsolescence because the Trust's farm building was new; 40% depreciation for functional obsolescence, mirroring the percentage that Blean had assigned to the comparable farm building, because the Trust's farm building was super-adequate or overbuilt for the size of the parcel and was specifically designed for the current owner's operations; and 20% depreciation for external obsolescence, consistent with the percentage that Blean had assigned to the comparable farm building. Blean converted the depreciation percentages for the Trust's farm building to dollar amounts ($162,778 or 40% for functional obsolescence and $81,389 or 20% for external obsolescence) and subtracted those amounts from the replacement cost to determine the contributory value, which Blean concluded was $162,778 for the Trust's farm building. That contributory value represented an assessed value of $54,260 (33⅓% of the contributory value rounded up).

---

[2] The terms, physical obsolescence or physical deterioration, functional obsolescence, and external obsolescence, have been defined later in this opinion.

¶ 10     The Board's appraisal was conducted by Joyce Webb, who, like Blean, was an Illinois certified general real estate appraiser. Similar to Blean, Webb used a cost approach to determine the contributory value of the Trust's farm building. Using the same cost guide as Blean, Webb estimated the reproduction cost of the Trust's farm building to be $375,316, not including the cost of site improvements. Unlike Blean, however, Webb decided that there was no depreciation to subtract from the replacement cost of the building. Webb concluded, therefore, that the contributory value of the farm building was $375,000 (rounded down), which represented an assessed value of $125,000 (33⅓% of the contributory value).

¶ 11     More specifically as to depreciation, Webb determined that there was no physical depreciation because the Trust's farm building was new; that there was no functional obsolescence because the Trust's farm building did not have any functional inadequacies, inefficiencies, or super-adequacies; and that there was no external obsolescence because economic conditions in the local farm market were reasonably strong and the value of farmland was appreciating at the time. In making her determination on functional obsolescence, Webb commented in her report that Sims had told her that he had built the farm building with 20-foot-high walls so that he could store larger farm equipment when he purchased that equipment. Webb noted that the assessor's records indicated that Sims and his wife owned several other parcels of farmland in Henry County and indicated in her report that it appeared from the amount of machinery in the farm building that the farm building was built to serve more than just the parcel on which the building was located.

¶ 12     In April 2017, a hearing was held before the PTAB on the Trust's property tax appeal. At the PTAB hearing, Blean and Webb both testified as to their qualifications and as to the conclusions and opinions contained in their reports. Blean explained that he applied 40%

5

functional obsolescence to the Trust's farm building because the building was an over-improvement for the size of the parcel and because it was unfair to assume that a person buying the property would not already have a building of his or her own or would be willing to pay full value for the Trust's farm building as it was constructed. When Blean was asked during his testimony whether farmers would typically build one building per farm or build one building to incorporate several farms, Blean responded that it could vary, but typically larger farming operations had a "base of operations." As for the comparable sale he used to calculate functional and external obsolescence, Blean acknowledged that it was a court-ordered sale and agreed that court-ordered sales were not usually viewed as arm's-length transactions but commented that he had very limited information available to develop the cost approach in this case. Blean insisted that from a buyer's perspective, the comparable sale he had used had full exposure to the market because the comparable property was available for inspection and the sale was advertised online.

¶ 13    Webb testified that in conducting her appraisal, she found there was no functional obsolescence for the Trust's farm building because the building had been built to suit the needs of a typical farm in Henry County. In reaching that conclusion, Webb noted that Sims had told her that he had built the farm building to accommodate his future purchase of a bigger combine and to store the big equipment that was necessary for "a good-size[d] farm operation." During her testimony, Webb confirmed that in conducting her appraisal, she considered that Sims owned other farm property. Webb commented that it would be "rather narrow sighted" for her to ignore Sims's other farm parcels when determining the farm building's contributory value because most farmers used a single storage facility to store equipment that serviced multiple parcels. Webb testified further that she found that there was no external obsolescence for the Trust's farm building because there was a good, strong economy in the agricultural sector. When asked about

the comparable sale that Blean had used in his appraisal, Webb opined that Blean's court-ordered sale was not useful in determining obsolescence because it was not an arm's-length transaction and did not have a typically motivated seller.

¶ 14　　　After all of the evidence had been presented, the parties made their closing arguments. The Trust argued that the farm building was overbuilt and that the PTAB should not consider the farm building's contributory value to Sims's entire farming operation. In making that argument, the Trust conceded that the comparable sale Blean had used to calculate obsolescence was "not a perfect sale" and "maybe not the best comparable" but asserted that it was the only data available.

¶ 15　　　The Board argued that the PTAB should consider the farm building's value to Sims's entire farming operation in evaluating the building's contributory value. The Board also argued that Webb's decision to apply no functional obsolescence was supported by the evidence that the farm building housed larger equipment to service Sims's entire farming operation in the area.

¶ 16　　　In May 2017, the PTAB issued a written decision denying the Trust's request for a reduction in the 2012 assessed value assigned to the farm building. In its ruling, the PTAB found that the Trust had failed to demonstrate by a preponderance of the evidence that a reduction in the assessed value of the farm building was warranted. In reaching that conclusion, the PTAB indicated in its order that it had given little weight to Blean's estimate of the contributory value of the farm building for several reasons, including that Blean had relied on an invalid comparable sale (not an arm's-length transaction) and that Blean had used an overinflated land value for the comparable property's farmland that caused the contributory value of the comparable farm building to be artificially low. The PTAB also noted that Blean did not include in his appraisal report his calculations for determining the replacement cost of the comparable farm building and

7

that he did not adequately explain or support the depreciation percentages that he had used. The PTAB indicated further in its order that it had found that the best evidence of the contributory value of the farm building was Webb's appraisal that had been submitted by the Board and commented that the cost approach developed by Webb was more detailed than Blean's and better reflected all of the individual components that made up the subject property.

¶ 17 Over a year later (the Trust was apparently not properly notified of the PTAB's decision), the Trust filed a complaint for administrative review in the trial court. A hearing was held on the matter. After considering the arguments of the parties, the trial court affirmed the PTAB's decision. In so doing, the trial court indicated that it viewed the issue presented as being more of a legal issue, rather than a factual issue, as to whether the phrase, "contribution to the productivity of the farm," contained in section 10-140 of the Property Tax Code (35 ILCS 200/10-140 (West 2012)) referred only to the parcel in question or to multiple parcels that were all a part of a taxpayer's farming operation. The trial court ultimately ruled in the PTAB's favor, concluding that the PTAB's decision was not against the manifest weight of the evidence, "short of a legal definition of how this applies." The Trust appealed.

¶ 18                                      II. ANALYSIS

¶ 19 On appeal, the Trust argues that the PTAB erred in finding that the Trust failed to meet its burden of proof to show by a preponderance of the evidence that the farm building had been given too high of an assessed value for the 2012 tax year and in denying the Trust's request for a reduction on that basis.[3] The Trust asserts that the PTAB's ruling was erroneous as a matter of

---

[3] At various times in its argument, the Trust refers to errors that were allegedly made by the trial court. Because on administrative review, we review the ruling of the PTAB and not the trial court (see *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006); *Senachwine Club v. Putnam County Board of Review*, 362 Ill. App. 3d 566, 568 (2005)), we will consider those arguments as being directed at the PTAB's ruling where it is appropriate to do so.

law because in determining the contributory value of the farm building, the PTAB relied entirely upon the flawed appraisal of the Board's appraiser, Webb, who, contrary to section 10-140 of the Property Tax Code and the relevant case law, failed to consider obsolescence and improperly considered the value of the farm building to Sims's other farm property that was not part of the farm parcel in question. The Trust also asserts that the manner in which the farm building was assessed in this case violated the equal protection clause of both the United States and Illinois Constitutions. For all of the reasons stated, the Trust asks, although somewhat implicitly, that we reverse the PTAB's ruling.

¶ 20    Defendants (the PTAB, the Board, and the Board's chairperson) argue that the PTAB's ruling was proper and should be upheld. In support of that argument, defendants make numerous assertions.[4] First, defendants assert that the main issue before this court is a factual issue and that the PTAB's ruling should be affirmed because the PTAB's factual determinations—its underlying factual findings, its assessment that Blean's appraisal had numerous flaws and was entitled to much less weight than the Webb's appraisal in determining the contributory value of the farm building, its determination that the Trust had failed in its burden of proof to show by a preponderance of the evidence that the assessed value of the farm building was too high, its finding as to the farm building's contributory value, and its ultimate determination that a reduction in the assessed value of the farm building was unwarranted—were all well supported by the evidence. In making that assertion, defendants point out that despite the Trust's contention to the contrary, the record here shows that Webb considered obsolescence and that she decided that it did not apply under the circumstances of the present case. Second, and in the alternative,

_____

[4] For the convenience of the reader and because it does not affect the outcome of this case, we have addressed defendants' arguments collectively here, rather than specifying what each defendant argued individually.

9

defendants assert that even if we assume for argument's sake that an issue of statutory interpretation exists, that the Trust's interpretation of the statute is correct, and that the Board's appraisal was flawed in that Webb should not have considered Sims's other farm property, the PTAB's ruling must still be upheld because the Trust failed to present any reliable evidence to establish that the farm building's assessed value was excessive since the Trust's appraisal was also flawed and because Webb's appraisal contained another reason for not applying functional obsolescence in this case (that the farm building was built to accommodate Sims's future purchase of larger farming equipment and was designed to suit the needs of a typical farm in Henry County), aside from a consideration of Sims's other farm properties, that the PTAB could have properly relied upon in making its decision. Third, and also in the alternative, defendants assert that even if this court rules upon the merits of the Trust's statutory interpretation argument, that argument fails because it contradicts the plain language of the Property Tax Code, precedential authority, and common sense. Fourth and finally, defendants assert that any claim by the Trust of a constitutional violation has been forfeited on appeal or is otherwise without merit. For all of the reasons set forth, defendants ask that we affirm the PTAB's ruling.

¶ 21    In reply to defendants' assertions, the Trust maintains its statutory interpretation argument. The Trust also argues, in the alternative, that even if this appeal is decided based upon the manifest weight of the evidence that was before the PTAB, the Trust should still prevail because Blean's estimate of contributory value was credible, despite a few limited shortcomings; Webb's estimate was not credible; the Trust satisfied its burden of proof; and the Board submitted no credible evidence of the contributory value of the farm building. As for its constitutional claims, the Trust asserts that defendants' forfeiture argument should not be followed here because this court has a duty to maintain a sound body of precedent. For those

10

reasons and the reasons initially stated, the Trust asks this court to reverse the PTAB's judgment, although the Trust again does so somewhat implicitly by asking for a reversal of the trial court's ruling.

¶ 22                                    A. Standard of Review

¶ 23        Before we address the merits of the parties' arguments on appeal, we must first determine the appropriate standard of review. The Trust asserts that the key issue presented in this appeal is a question of law involving a matter of statutory interpretation, as the trial court indicated, regarding the manner in which farm buildings are valued for property tax purposes—whether the contributory value of a farm building should be based upon what the building contributes to the specific farm parcel in question or based upon what the building contributes to the entire farming operation, if a multiple-parcel farming operation is involved. Thus, the Trust contends that the appropriate standard of review for that issue is *de novo*. As for its constitutional claim, the Trust argues that *de novo* review is appropriate for that claim as well.

¶ 24        Defendants argue that the main issue in this appeal primarily involves factual questions regarding the application of the cost method of valuing the farm building and the appropriate amount of depreciation to be applied. Thus, defendants contend that the appropriate standard of review for that issue is the manifest weight standard—that the PTAB's findings on those factual questions should not be disturbed on appeal unless they are against the manifest weight of the evidence.[5] In making that argument, defendants point out that the PTAB did not interpret any statutory provisions when it ruled upon the Trust's tax appeal. Defendants acknowledge, however, that a *de novo* standard of review would apply to the extent that this court is required to

---

[5] As with defendants' arguments on the merits, for the convenience of the reader and because it does not affect the outcome of this case, we have presented defendants' arguments on the standard of review collectively here, rather than individually.

11

interpret the language of the relevant statute in resolving the Trust's arguments here. Finally, with regard to the Trust's constitutional claim, defendants argue that if this court reaches the merits of that claim, either a *de novo* standard of review or a mixed standard of review should be applied.

¶ 25    In cases involving administrative review, the appellate court reviews the decision of the administrative agency—in this case, the PTAB—not the determination of the trial court. *Marconi*, 225 Ill. 2d at 531; *Senachwine Club*, 362 Ill. App. 3d at 568. Judicial review of a decision of the PTAB is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2016)) and extends to all questions of fact and law presented by the entire record. See 35 ILCS 200/16-195 (West 2016); 735 ILCS 5/3-110 (West 2016); *Marconi*, 225 Ill. 2d at 532 (discussing the standard of review and legal principles that applied to administrative review cases in general and not in the context of a property tax appeal case); *John J. Moroney & Co. v. Illinois Property Tax Appeal Board*, 2013 IL App (1st) 120493, ¶ 35. The standard of review that applies on appeal is determined by whether the question presented is one of fact, one of law, or a mixed question of fact and law. *Marconi*, 225 Ill. 2d at 532; *Moroney*, 2013 IL App (1st) 120493, ¶ 36. As to questions of fact, the PTAB's decision will not be reversed on appeal unless it is against the manifest weight of the evidence (the manifest weight standard). *Marconi*, 225 Ill. 2d at 532; *Moroney*, 2013 IL App (1st) 120493, ¶ 36. Questions of law, however, are subject to *de novo* review, and mixed questions of fact and law are reviewed under the clearly erroneous standard. *Marconi*, 225 Ill. 2d at 532; *Moroney*, 2013 IL App (1st) 120493, ¶ 36.

¶ 26    Having considered the parties' arguments on the standard of review in the present case, we find that the appropriate standard to be applied to the key issue here is the manifest weight standard. In making that determination, we note that the Trust has not asserted in this case that

12

the appraisers or the PTAB used an inappropriate method of valuation in determining the value of the farm building. See *Kraft Foods, Inc. v. Illinois Property Tax Appeal Board*, 2013 IL App (2d) 121031, ¶ 44 (recognizing that a *de novo* standard of review applied when the issue presented on appeal was whether an inappropriate valuation methodology was used in determining the value of the property). To the contrary, all of the parties agree, and it is has been specifically expressed by the Department of Revenue, that the appropriate method for valuing a farm building is the cost method. See Ill. Dep't of Revenue, Publication 122 Instructions for Farmland Assessments, at 37 (Jan. 2020), https://www2.illinois.gov/rev/research/publications/pubs/Documents/pub-122.pdf [https://perma.cc/TDZ4-BL3G].[6, 7] Indeed, both of the appraisals that were submitted in the present case used the cost method to estimate the contributory value of the Trust's farm building.

¶ 27     In applying the manifest weight standard in this case, we must be mindful of the following legal principles. The PTAB's findings and conclusions on questions of fact are deemed to be *prima facie* true and correct. See 735 ILCS 5/3-110 (West 2016); *Marconi*, 225 Ill. 2d at 534; *Moroney*, 2013 IL App (1st) 120493, ¶ 35; *Senachwine Club*, 362 Ill. App. 3d at 568. For a reversal to be warranted under the manifest weight standard, it must be clearly evident from the record that the PTAB should have reached the opposite conclusion. *Marconi*, 225 Ill. 2d at 534;

---

[6] It is generally accepted that a court may take judicial notice of the information on a government website. See, *e.g.*, *Ashley v. Pierson*, 339 Ill. App. 3d 733, 739-40 (2003) (taking judicial notice, although somewhat implicitly, of information on the Illinois Department of Corrections website); see also Ill. R. Evid. 201(b) (eff. Jan. 1, 2011) (indicating that a judicially noticed fact must be one that is not subject to reasonable dispute because it is either generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned).

[7] A copy of Publication 122 with an effective date of January 2010 (the 2010 version) was submitted by the Board at the PTAB hearing. The current version of Publication 122 cited here is essentially the same as the 2010 version with regard to the matters that are relevant in this appeal.

*Moroney*, 2013 IL App (1st) 120493, ¶ 36. That the opposite conclusion is reasonable or that the reviewing court might have ruled differently if it were the trier of fact is not enough to justify a reversal. *Marconi*, 225 Ill. 2d at 534. Thus, if the record contains some competent evidence to support the PTAB's decision, the PTAB's decision should be affirmed. See *Marconi*, 225 Ill. 2d at 534; *Moroney*, 2013 IL App (1st) 120493, ¶ 36. Furthermore, determining the credibility of witnesses and weighing the evidence are the responsibilities of the PTAB, not the reviewing court. See *Kraft Foods*, 2013 IL App (2d) 121031, ¶ 51. When examining the PTAB's factual findings on administrative review, therefore, the reviewing court will not reweigh the evidence presented in the PTAB hearing, reassess the credibility of the witnesses, make an independent determination of the facts, or substitute its judgment for that of the PTAB. See *Marconi*, 225 Ill. 2d at 534; *Moroney*, 2013 IL App (1st) 120493, ¶ 35; *Kraft Foods*, 2013 IL App (2d) 121031, ¶ 51. Nor will the appellate court intervene when there is simply a difference of opinion as to the actual value of the property. *Kraft Foods*, 2013 IL App (2d) 121031, ¶ 51.

¶ 28                                    B. Whether the PTAB's Ruling Was
                                     Against the Manifest Weight of the Evidence

¶ 29          Turning to the merits of the parties' arguments on appeal, we note that under Illinois law, as a general rule, real property is assessed for property tax purposes based upon its fair market value (also referred to more simply as market value)—the price the property would bring in a fair and voluntary sale. See 35 ILCS 200/1-50, 9-145 (West 2012); 86 Ill. Adm. Code 1910.5(b)(5) (2014); *Kraft Foods*, 2013 IL App (2d) 121031, ¶ 43. Farm improvements, however, such as the building in the present case, are an exception to that general rule and are assessed based upon their contributory value to the farm rather than based upon their market value. See 35 ILCS 200/10-140 (West 2012); *O'Connor v. A&P Enterprises*, 81 Ill. 2d 260, 267, 275 (1980). Specifically, section 10-140 of the Property Tax Code provides that improvements on farm

14

property, other than a dwelling, "shall have an equalized assessed value of 33⅓% of their value, based upon the current use of those buildings and the contribution to the productivity of the farm." 35 ILCS 200/10-140 (West 2012). Section 10-140 thus reflects the legislature's recognition that certain farm structures may have become obsolete due to changes in farming methods or practices and may have a greatly diminished value, or no value, in connection with the farming operation. See *O'Connor*, 81 Ill. 2d at 267 (discussing a prior version of the statute).

¶ 30        Although there are different methods for estimating the value of real property, the Department of Revenue, which is responsible for issuing guidelines and recommendations for valuing farmland, has clarified that the contributory value of a farm building (or other farm improvement) should be determined using the cost approach or cost method of valuation. Publication 122, *supra* at 37. Under the cost approach, contributory value is calculated by first estimating the reproduction or replacement cost new of the building in question and then subtracting depreciation from the replacement cost amount. See *id.* at 38. There are three types of depreciation that must be considered when using the cost approach: physical deterioration (a loss in the physical ability of a building to withstand normal use due to wear and tear, structural defects, and/or decay), functional obsolescence (a loss in value due to the characteristics of the building—such as poor design, surplus capacity, and/or changes in farming techniques—that cause a failure of the building to serve its intended purpose), and economic obsolescence (a loss in value due to changes in the economic environment of the farm, which results from external influences, such as land-use changes, government regulations, and/or farm market conditions). *Id.* at 37.

¶ 31        In a hearing before the PTAB, the PTAB's role is to determine the correct assessed value of the property based upon the facts, evidence, exhibits, and briefs that have been submitted to

15

the PTAB. 86 Ill. Adm. Code 1910.10(b) (1997); *1411 North State Condominium Ass'n v. Illinois Property Tax Appeal Board*, 2016 IL App (1st) 143757, ¶ 6 (*1411 North State*). A taxpayer who appeals an assessment to the PTAB has the initial burden of going forward—the burden of production—and must present substantive documentary evidence or legal argument that is sufficient to challenge the correctness of the assessment. See 86 Ill. Adm. Code 1910.63(a), (b) (2000); *1411 North State*, 2016 IL App (1st) 143757, ¶ 8; *Peacock v. Property Tax Appeal Board*, 339 Ill. App. 3d 1060, 1068 (2003). If the taxpayer satisfies that burden, the burden of production shifts to the county board of review to present substantive documentary evidence or legal argument to support the assessed value that the board of review assigned to the property (or an alternative value). See 86 Ill. Adm. Code 1910.63(c) (2000); *1411 North State*, 2016 IL App (1st) 143757, ¶ 8; *Peacock*, 339 Ill. App. 3d at 1068. Although the burden of production may shift between the taxpayer and the board of review, the ultimate burden of persuasion throughout the proceedings remains on the taxpayer to prove by a preponderance of the evidence that the assessed value assigned to the property is excessive. See 86 Ill. Adm. Code 1910.63(e) (2000); *1411 North State*, 2016 IL App (1st) 143757, ¶ 9; *Peacock*, 339 Ill. App. 3d at 1071.

¶ 32       In the present case, the PTAB ultimately found following an evidentiary hearing that the Trust had failed in its burden of proof to show by a preponderance of the evidence that the farm building had been given too high of an assessed value for the 2012 tax year. After having reviewed the record of the PTAB proceedings, we conclude that the PTAB's finding on the Trust's failure to satisfy its burden of proof was not against the manifest weight of the evidence. See *Marconi*, 225 Ill. 2d at 532-34; *Moroney*, 2013 IL App (1st) 120493, ¶ 36. At the heart of the PTAB's decision was its determination that the appraisal submitted by the Trust in support of its

16

position (Blean's appraisal) was flawed and that it was entitled to little weight. That credibility determination was in the PTAB's province to make (see *Kraft Foods*, 2013 IL App (2d) 121031, ¶ 51 (recognizing that determining the credibility of witnesses and weighing the evidence are the responsibilities of the PTAB, not the reviewing court)) and was well supported by the evidence. Most notably, Blean's written appraisal report and his testimony before the PTAB established that Blean had relied on only one comparable sale in determining the amount of functional and external obsolescence to apply to the Trust's farm building and that the comparable sale that Blean had used was invalid for comparison purposes because it did not involve an arm's-length transaction. The PTAB also noted and documented in its written order other flaws that it had found in Blean's appraisal/opinion as to the contributory value of the farm building, including, among other things, that Blean had used an overinflated value for the farmland of the comparable property, which resulted in a higher level of depreciation being attributed to the comparable farm building and to the Trust's farm building by extrapolation; that Blean had failed to set forth in his appraisal his calculations for determining the replacement cost of the comparable farm building; and that Blean had failed to specify in his appraisal why he allocated the depreciation percentages in the manner that he did for the comparable farm building.

¶ 33 By contrast, the PTAB found that the Board's appraisal (Webb's appraisal) was the best evidence of the contributory value of the farm building, noting that the cost approach developed by Webb was more detailed than Blean's and better reflected all of the individual components that made up the subject property. Although the Trust attacks that finding here, claiming that Webb failed to consider obsolescence, the record does not support that claim. To the contrary, the record shows that Webb considered obsolescence and that she determined that it did not apply in this case. Webb explained the reasons for her decision in that regard in both her written

17

appraisal report and her testimony. Therefore, based upon the PTAB's factual findings as to the credibility/weight to be given to each of the two appraisals—findings that were not against the manifest weight of the evidence—we must conclude that the PTAB correctly determined that the Trust failed to satisfy its burden of proof to show that a reduction in the assessment was warranted. See 86 Ill. Adm. Code 1910.63(e) (2000); *1411 North State*, 2016 IL App (1st) 143757, ¶ 9; *Peacock*, 339 Ill. App. 3d at 1071.

¶ 34                              C. The Trust's Statutory Interpretation Argument

¶ 35            Having concluded that the PTAB's ruling was not against the manifest weight of the evidence and must be affirmed, we find is unnecessary to rule upon the merits of the Trust's statutory interpretation argument. As defendants correctly point out in this appeal, even if the Trust's statutory interpretation argument was correct and Webb's appraisal was flawed, we would still have to uphold the PTAB's determination because the Trust failed to present any credible evidence to establish that the Trust's farm building had been over-assessed. See 86 Ill. Adm. Code 1910.63(e) (2000) (indicating that the taxpayer/contesting party has the burden to prove by a preponderance of the evidence that the property has been over-assessed); *1411 North State*, 2016 IL App (1st) 143757, ¶ 9 (same); *Peacock*, 339 Ill. App. 3d at 1071 (same). As we indicated above, the PTAB's specific factual finding—that Blean's appraisal was flawed and was entitled to little weight—was not against the manifest weight of the evidence and must be upheld here. See *Marconi*, 225 Ill. 2d at 534; *Moroney*, 2013 IL App (1st) 120493, ¶ 36.

¶ 36                              D. The Trust's Constitutional Claim

¶ 37            Finally, with regard to the Trust's claim that the assessment method used in this case constituted a violation of the Trust's equal protection rights, we believe that the Trust's claim in that regard has been forfeited since the Trust did not assert that claim when the matter was before

18

the PTAB. See *Board of Education, Joliet Township High School District No. 204 v. Board of Education, Lincoln Way Community High School District No. 210*, 231 Ill. 2d 184, 205 (2008) (stating that any issue not raised before the administrative agency, even constitutional issues that the agency lacks authority to decide, will be forfeited). Furthermore, because our decision in this appeal turns upon the PTAB's factual findings and the applicable standard of review, we do not agree with the Trust's assertion that the Trust's forfeiture should be ignored in this case to maintain a sound body of precedent.

¶ 38                                   III. CONCLUSION

¶ 39        For the foregoing reasons, we affirm the judgment of the PTAB.

¶ 40        Affirmed.

| | |
|---|---|
| **Cite as:** | *Edward Sims Jr. Trust v. Henry County Board of Review*, 2020 IL App (3d) 190397 |
| **Decision Under Review:** | Appeal from the Circuit Court of Henry County, No. 18-MR-158; the Hon. Jeffrey W. O'Connor, Judge, presiding. |
| **Attorneys for Appellant:** | Jerry J. Pepping and Jennifer L. Kincaid, of Pepping, Balk, Kincaid & Olson, Ltd., of Silvis, for appellant. |
| **Attorneys for Appellee:** | Matthew Schutte, State's Attorney, of Cambridge (Stephanie Barrick, Assistant State's Attorney, of counsel), for appellees Henry County Board of Review and Tamra S. Dynes.<br><br>Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Carson R. Griffis, Assistant Attorney General, of counsel), for other appellee. |