2021 IL App (1st) 190952-U

No. 1-19-0952

Order filed June 30, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

_

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 8135 |
| | ) | |
| JOZETTE GREENFIELD, | ) | Honorable |
| | ) | Carol M. Howard, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MARTIN delivered the judgment of the court.
Justice Reyes concurred in the judgment.
Presiding Justice Gordon specially concurred.

**ORDER**

¶ 1    *Held*: We reverse Greenfield's conviction for harassment through electronic communication where the evidence was insufficient to show that defendant communicated a threat of injury to the victim.

¶ 2    Following a bench trial, defendant Jozette Greenfield was convicted of harassment through electronic communication (720 ILCS 5/26.5-3(a)(5) (West 2018)) and sentenced to 24 months' probation and 20 hours of community service. On appeal, she contends the State failed to prove

beyond a reasonable doubt that she communicated a threat of injury to the victim Carmello Rodriguez through electronic means.[1] For the following reasons, we reverse.[2]

¶ 3                                    I. JURISDICTION

¶ 4     The trial court sentenced Greenfield on April 12, 2019 and, on that same date, Greenfield filed a notice of appeal. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1980, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. July 1, 2017), governing appeals from a final judgment of conviction in a criminal case.

¶ 5                                    II. BACKGROUND

¶ 6     On April 12, 2019, following a bench trial, Greenfield was found guilty of harassment through electronic communication for sending various text messages to Rodriguez threatening injury to him or his property. The State sought to enhance Greenfield's conviction to a Class 4 felony offense, as Greenfield had been previously convicted of harassing Rodriguez via telephone in a 2017 misdemeanor case.

¶ 7     The relationship between Greenfield and Rodriguez centered around a property dispute, which resulted in several civil lawsuits between the two and the aforementioned misdemeanor case. In 2016, Rodriguez purchased a property on the 800 block of North Menard Avenue, in Chicago (the Menard property). Thereafter, Greenfield began contacting Rodriguez, disputing his ownership of the property. Greenfield repeatedly contacted Rodriguez via phone calls and text

_____

[1] Rodriguez's first name is alternately spelled "Carmelo" in various places throughout the record. For purposes of clarity, we use the spelling Rodriguez uses on the record at trial.

[2] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

messages into February 2017. Based on the February 2017 communications, Greenfield pleaded guilty to misdemeanor telephone harassment and, on July 27, 2017, was sentenced to two years' probation. Greenfield was further ordered not to contact Rodriguez.

¶ 8     At trial in the instant case, Rodriguez testified he purchased the Menard property in July 2016. In December 2016, he started receiving phone and text communications from a woman who identified herself as Greenfield. Rodriguez contacted the police. In February 2017, Greenfield showed up at the Menard property with a locksmith she had hired to change the locks. Greenfield also contacted Rodriguez via text messages and left him several voicemails. Rodriguez told Greenfield to stop texting him and that he was going to file a complaint. He then contacted police regarding the February 2017 communications.

¶ 9     In the summer of 2017, Greenfield twice appeared at the Menard property and, on July 27, 2017, Rodriguez obtained an order of protection prohibiting Greenfield from contacting him.

¶ 10    In April 2018, while the order of protection was in effect, Greenfield texted Rodriguez "like 30 times" between April 27 and April 29. At trial, the State introduced into evidence copies of the text messages Rodriguez received from Greenfield. On Friday, April 27, 2018, at 6:28 a.m., Greenfield sent the following texts to Rodriguez:

> "Good morning. Sorry to text so early, Carmello Rodriguez.
> This is Jozette Greenfield, the owner of the property, 821 North
> Menard. I am reaching out to you to offer by law a chance to settle
> our litigation. I am willing to move home Tuesday. Period.
>
> And you file your claim with Chicago title insurance claim.
> Let me know if you agree with my settlement offer.

My father died in that House, and I am willing to die fighting for it. I will never let you sell my family estate, nor have it.

So, if we can't settle this like grown adults, this war is going to end badly, and please understand I am willing to die for our family estate.

I don't care what the courts say, you are not the owner. Your [*sic*] a thief is [*sic*] you continue to go to war for an estate that's not your [*sic*], I never lose when I fight for the truth.

Walk away."

¶ 11    On Friday, April 27, 2018, at 9:12am, Rodriguez received the following text messages:

"No… O.k

I see You don't understand anything about God.

I was in [*sic*] loan officer for country wide Real estate, and if a property had a lien of les pendis [*sic*] on it. I would talk to the home owner. I spoke to a lady, out of all the properties I sold, refinance, foreclose properties. I helped people, love to put a smile on people face, when they get the keys to there [*sic*] new homes, I didn't do it for money. I did it because I love to help people.

That's why I'm blessed, God will never let you sell, or have the property. We're both spending money on attorney, and for what!!!!

You think God will bless you, not until you walk away. Stop getting angry and enjoy life. You have a house, I'm home less. You keep saying, there [*sic*] not going to give me the house back, well the only person fighting is you, not they.

Do the right thing, Carmelo Rodriguez, so that God will bless you.

Yes, you have won...but are you doing the right thing?

Give my family estate back to normal owner, this is the right thing to do. Don't be greedy, this house means nothing to you, but it means the world to me.

But, if you just want to be the devil, like the crooked bank. Then don't forget, if the bad things start happening to you and your family. It's one f*** house, Carmelo you can get more.

The power of Jesus Christ will prevail."

¶ 12 On Sunday April 29, 2018, at 9:51 a.m., Greenfield sent the following text messages to Rodriguez:

"Your [*sic*] holding on to a order saying I can't come to my property, until the case is over. So, what I don't think you get is, the evictions were illegal foreclosure illegal judgment is vacated soon I am going to be allowed back home by a court order. So please help me out, why are we still fighting

This case you cannot win, Mr. Carmelo Rodriguez, have you lost your mind, and stop being human. You don't KNOW you cannot win against the law or truth.

You asked yourself, how do you get rid of me. Then you put a little camera on my property and have a piece of fraudulent order. This is only a temporary solution, to getting rid of me.

It's like putting a bandage on a scar. But, soon the court will see all the fraud and foolishness, you, your attorney and k luver and Platt Have FILED.

You want a quick fix to get rid of me. GET AWAY, WALK AWAY, NO RUN.. It's not your Land, or House.

You lose…

Jesus Christ will prevail"

¶ 13    On Monday, April 30, 2018, at 6:26 a.m., Rodriguez received the following messages from Greenfield:

"God is real, anything can happen.

Miracles happen every day."

¶ 14    Rodriguez did not respond to any of the texts, as he did not want to communicate with Greenfield. Instead, he contacted the police, advising them that Greenfield continued to contact him despite a no-contact order being in effect. Greenfield contacted him once again in May 2018 via text message.

¶ 15    Rodriguez testified he spoke with a detective in May 2018 regarding the April 2018 texts. He explained his history with Greenfield and provided copies of the texts. Regarding the nature of the civil litigation, Rodriguez explained Greenfield filed both a lien on the Menard property and a separate lawsuit alleging he kept Greenfield's personal property after she was evicted from the property. The civil litigation was dismissed in July 2018. Rodriguez later acknowledged that there were three court actions, two civil and one criminal in nature, between him and Greenfield.

¶ 16    The State introduced the sentencing order from the 2017 misdemeanor case, which was admitted into evidence. The July 27, 2017, sentencing order states Greenfield was not to have "unlawful contact with [complaining witness] Carmello Rodriguez. No contact by any means with Carmello Rodriguez's family. No contact with 821 North Menard in Chicago, Illinois. No contact with 1632 North Narragansett, Chicago, Illinois, unless and until there is a resolution in civil court."

¶ 17    Chicago police detective Jerry Pentimone testified he met with Rodriguez in May 2018 regarding the April 2018 text messages. Based on information he obtained from Rodriguez, Pentimone identified Greenfield as a possible suspect and interviewed her. She waived her rights and gave a statement, which was not recorded. In her statement, Greenfield averred that she was aware of the allegations Rodriguez had made against her. She further stated that these purported threats were made indirectly by direction of her through a third party. Greenfield also told Pentimone about the civil litigation between her and Rodriguez.

¶ 18    During closing arguments, the State argued Greenfield's statements that the "war would end badly," that Rodriguez should not "forget if the bad things start happening to you and your family," and that Rodriguez should "walk away. No run" constituted threats of injury to Rodriguez.

¶ 19    In response, defense counsel argued the issue was whether the texts sent to Rodriguez threatened injury to him or his property. In context, counsel argued all of the text messages together showed she was not threatening injury to Rodriguez; rather, her texts indicated religious or karmic vindication. Counsel further argued the texts regarding Greenfield's willingness to die for her family estate, in context, referred to the pending civil litigation, and her words were used in a hyperbolic sense. In response to the court's inquiry regarding the 2017 no-contact order, defense counsel argued Greenfield's potential violation of the sentencing order was "not within this court's purview." Counsel contended the 2017 sentencing order was only relevant to sentencing in the instant case and did not prove that the April 2018 text messages communicated a threat of injury.

¶ 20    The court found Greenfield guilty of harassment through electronic communication. In so finding, it stated it reviewed the 2017 sentencing order. The court explained that the combination of the sentencing order and the language of the texts themselves "cause[d] this court some concern." Specifically, the court referenced the texts where Greenfield stated she was willing to die for the house, she did not care what the courts said regarding ownership, and that the war would end badly. The court stated the totality of the circumstances showed the State met its burden of proof.

¶ 21    The court denied Greenfield's motion and supplemental motion for a new trial. The court subsequently sentenced Greenfield to 24 months' probation and 20 hours of community service, and ordered no contact with Rodriguez, his family, and the Menard property. Greenfield timely appealed.[3]

---

[3] Greenfield filed a duplicate appeal under case number 1-19-1094. We allowed the Office of the State Appellate Defender's motion to dismiss appeal 1-19-1094 as a duplicate of the instant appeal.

¶ 22                                      III. ANALYSIS

¶ 23     On this direct appeal, Greenfield argues the evidence was insufficient to prove beyond a reasonable doubt that she communicated a threat of injury to Rodriguez through electronic means.

¶ 24     On a challenge to the sufficiency of the evidence, we inquire " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. Davison,* 233 Ill. 2d 30, 43 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In so doing, we draw all reasonable inferences in favor of the State (*id.*), and we do not retry the defendant (*People v. Collins*, 106 Ill. 2d 237, 261 (1985)). The State must prove each element of an offense beyond a reasonable doubt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). We will not overturn a criminal conviction "unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Givens,* 237 Ill. 2d 311, 334 (2010).

¶ 25     As charged in this case, a person commits harassment through electronic communications when she uses electronic communication to threaten injury to the person or to the property of the person to whom an electronic communication is directed or to any of his family or household members. 720 ILCS 5/26.5-3(a)(5) (West 2018).

¶ 26     Greenfield only challenges that the State failed to prove she threatened injury to Rodriguez. Greenfield analogizes her case to several cases which involve the offense of threatening a public official and argues that her communication was not a "true threat." See *People v. Smith*, 2019 IL App (4th) 160641; *People v. Goodwin*, 2018 IL App (1st) 152045; *People v. Wood*, 2017 IL App

(1st) 143135; *People v. Dye*, 2015 IL App (4th) 130799. The State also relies on cases interpreting the meaning of what constitutes a threat in the context of the offense of threating a public official.

¶ 27    But the offense of threatening a public official requires entirely different elements of proof than the instant offense, including that the communication to the public official contain "a threat that would place the public official *** in reasonable apprehension of immediate or future bodily harm *** or *** that damage will occur" to property in the custody of the official or the official's family. See 720 ILCS 5/12-9(a)(1) (West 2018). Greenfield cites no authority for the proposition that "threat" as defined in the context of the offense of threatening a public official applies to the electronic harassment offense at issue here. Compare 720 ILCS 5/12-9(a) (West 2018) with 720 ILCS 5/26.5-3(a)(5) (West 2018). The offense of harassment through electronic communication does not contain a requirement that the communication place the recipient "in reasonable apprehension of immediate or future bodily harm" or damage to property. See 720 ILCS 5/26.5-3(a)(5) (West 2018). Indeed, the statute at issue does not define "threaten." Furthermore, we have found no case law interpreting what constitutes a threat under the harassment through electronic communications statute.

¶ 28    Nevertheless, we agree with Greenfield that the evidence was insufficient to prove she communicated a threat of injury to Rodriguez's person or property. To prove Greenfield guilty of electronic harassment, the State had to prove her electronic communications were for purposes of "threatening injury" to Rodriguez or his property. See 720 ILCS 5/26.5-3(a)(5) (West 2018)). As the Illinois Supreme Court unanimously recognized in *People v. Ashley*, " '[t]rue threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.' "

(Internal quotation marks omitted.) 2020 IL 123989, ¶ 33 (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). When Greenfield's text messages are analyzed in accordance with these parameters, it is clear that her communication with Rodriguez does not constitute a "true threat."

¶ 29    The evidence showed Greenfield sent Rodriguez a number of texts over the course of several days stating she would die fighting for the Menard property and that the "war" they were engaged in over the property would end badly. She also stated, "But, if you just want to be the devil, like the crooked bank. Then don't forget, if the bad things start happening to you and your family." Greenfield's statement referring to "bad things" happening does not state what things would happen or whether defendant would cause them, and therefore does not communicate a threat of injury. Additionally, that statement ended with "It's one f*** house, Carmelo you can get more. The power of Jesus Christ will prevail," rather than communicating how the "bad things" would come to fruition. Greenfield's statements out of context vaguely reference her willingness to engage in a fight over the Menard property. However, in context, Greenfield's texts related to the pending civil litigation regarding the Menard property and her religious belief that she would prevail. She refers to her willingness to die in the struggle for the property, and possibly to God's retribution against Rodriguez for his refusal to abandon the Menard property, but nothing in the texts was "threatening injury" sufficient to support the conviction. While we acknowledge the excessive, aggressive nature of Greenfield's texts, they do not contain the requisite elements of a "true threat" to injure Rodriguez's person or property, as required by the statute. Rather, Greenfield's actions were harassing and violated the no-contact order that was in place at the time she sent the text communications to Rodriguez.

¶ 30    For the foregoing reasons, we reverse the judgment of the circuit court of Cook County.

¶ 31    Reversed.

¶ 32    PRESIDING JUSTICE GORDON specially concurring:

¶ 33    I agree with the majority that the evidence in this case was insufficient to prove that Greenfield communicated a threat of injury to Rodriguez, but I must write separately to explain from a legal point of view what a threat of injury encompasses.

¶ 34    " 'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Virginia v. Black, 538 U.S. 343, 359 (2003). "The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.' " Black, 538 U.S. at 359-60 (quoting R.A.V. v. City of St. Paul, 505 U.S. 377, 388 (1992)). In order to determine whether a threat is a "true threat," it is important to consider the context in which the threat was made, including the reaction of the listeners. See Watts, 394 U.S. at 708 (considering "the expressly conditional nature of the statement" and "the reaction of the listeners"). Generally, the question of whether a particular statement constitutes a "true threat" is for the finder of fact to decide. United States v. Roberts, 915 F.2d 889, 891 (4th Cir. 1990). However, some courts have also applied an independent review of "constitutional facts," meaning that a reviewing court defers to the factfinder's findings on historical facts, credibility determinations, and elements of statutory liability but then conducts an independent review of the record " 'to determine whether the facts as found by the [factfinder] establish the core constitutional fact' of a true threat." United States v.

Turner, 720 F.3d 411, 419 (2nd Cir. 2013) (quoting United States v. Hanna, 293 F.3d 1080, 1088 (9th Cir. 2002)). See Flood v. Wilk, 2019 IL App (1st) 172792, ¶ 37.

¶ 35    In the case at bar, Greenfield's writings directed at Rodriguez demonstrated that she viewed herself as a recipient of some "divine intervention" showing that there is a God in heaven and a devil in hell and that God was on her side when she said:

> "God will never let you sell, or have the property.
>
> ***
>
> Do the right thing, Carmelo Rodriguez, so that God will
> bless you.
>
> * * *
>
> But, if you just want to be the devil, like the crooked bank.
> Then don't forget, if the bad things start happening to you and your
> family. It's one f*** house, Carmelo you can get more.
> The power of Jesus Christ will prevail."

While the language used by Greenfield is not an explicit threat to harm Rodriguez or his property, the context of Greenfield's communications references spiritual warfare between good and evil. There is nothing in the words of Greenfield that shows her writings rose to the level of posing a "true threat" to the physical safety of Rodriguez and/or his property. The trial court made no findings that show such a link, and it appears that no link can be found from the words used by Greenfield simply because they are distressing, annoying, and troublesome. As a result, Greenfield's conviction must be reversed.