2023 IL App (1st) 221003-U

FOURTH DIVISION
Order filed: June 8, 2023

No. 1-22-1003

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| CHARLES TERMINI, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| THE BOARD OF REVIEW OF THE ILLINOIS | ) | |
| DEPARTMENT OF EMPLOYMENT SECURITY, THE | ) | No. 21 L 50290 |
| ILLINOIS DEPARTMENT OF EMPLOYMENT | ) | |
| SECURITY, DIRECTOR OF THE ILLINOIS | ) | |
| DEPARTMENT OF EMPLOYMENT SECURITY, THE | ) | |
| CITY OF CHICAGO DEPARTMENT OF PERSONNEL, | ) | |
| and THE CITY OF CHICAGO. | ) | Honorable |
| | ) | Daniel Duff, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Lampkin and Justice Martin concurred in the judgment.

**ORDER**

¶ 1        *Held*: Employee's termination for posting on Facebook that he would take his coworkers down with him if they transmitted COVID-19 to him qualified as a termination for "misconduct," making him ineligible for unemployment benefits.

¶ 2 Appellant Charles Termini appeals a circuit court order affirming an administrative decision denying him unemployment benefits after he was terminated from his job with the City of Chicago ("the City") for posting a threatening message to his coworkers on Facebook. Termini contends that the City failed to establish that he willfully violated any City policy or committed any criminal offense warranting the denial of benefits. We disagree and affirm.

¶ 3 Termini worked as a truck driver for the City at O'Hare International Airport. On April 12, 2020, at the beginning of the COVID-19 pandemic, Termini published a post to the Facebook page for the Teamsters union representing truck drivers at O'Hare in which he objected to coworkers coming to work while exhibiting COVID-19 symptoms. Following a correction to a grammatical error, the post read as follows: "This is really getting old. I'm sick of this. How is it that money comes before safety? Well, you've been warned. You better pray this doesn't touch my life because I'll take you all with me." Termini then modified the post a second time so that it simply read, "You've been warned." As a result of these posts, the City terminated Termini's employment.

¶ 4 Termini then submitted an application for unemployment benefits to the Illinois Department of Employment Security ("the Department"). The City protested Termini's application for benefits on the basis that he had been terminated for "misconduct" and, therefore, was not eligible for unemployment benefits under section 602(A) of the Unemployment Insurance Act ("Act") (820 ILCS 405/602(A) (West 2020)). The City specifically stated that it had dismissed Termini because he "used his Facebook social media to willfully and deliberately make threatening statements

towards his coworkers, thereby, committing harassment through electronic communication" in violation of section 26.5-3 of the Criminal Code of 2012 ("Criminal Code") (720 ILCS 5/26.5-3 (West 2020)) and Personnel Rule XVIII, Section 1, Subparagraph 15.

Following an interview with Termini, a claims adjuster ruled that Termini was eligible for unemployment benefits because Termini's actions were not a violation of a reasonable rule or policy of his employer. The City requested reconsideration of the decision, which the adjuster denied.

¶ 5 The City then initiated an administrative appeal of the adjuster's decision. An administrative law judge (ALJ) from the Department held a hearing on the matter. At that hearing, Anita Morris, an attorney for the City, testified that Termini was discharged for making threats towards coworkers and that an unstated number of Termini's coworkers had actually reported feeling threatened by Termini's Facebook posts and feared that he "might actually come into the workplace and harm them." According to Morris, Termini admitted to writing the posts and apologized to his superiors the next day. Morris testified that Termini had explained that he "was hoping to scare people into not coming to work" if they had COVID-19 symptoms.

¶ 6 When asked about the City's personnel policies, Morris testified that the City had a policy prohibiting electronic communications "of a threatening manner." Morris believed that Termini had received a copy of that policy, but she could not recall for sure, and she did not have any proof that he was aware of the City's policies. She added that the City's policies are available on its website and that all employees are directed to review the policies when they are hired.

¶ 7 For his part, Termini testified that he "absolutely" did not receive the City's personnel rules containing the policy against electronic harassment. Termini acknowledged being responsible for

the posts in question, and he explained that they were intended "to stop fellow truck drivers from coming to work fully symptomatic." When asked what he meant when he wrote, "you've been warned," Termini explained, "if I contracted the virus, I was going to come to work sick just like everybody else did." Termini further testified that he did not intend the message to be threatening and that he sent an email to his superiors the next day clarifying that it "was not a threat of violence," that it was "poor judgment" and "poor wording," and that it "was just to get people to stop coming to work if they were sick."

¶ 8 The ALJ then issued a written decision determining that Termini was eligible for unemployment benefits. The ALJ reasoned that the evidence failed to establish that Termini willfully and deliberately violated the City's policy against electronic harassment because the evidence showed that Termini was not aware of the policy. Further, the ALJ credited Termini's testimony that he did not intend to harm any of his coworkers and was merely trying to deter them from coming to work while sick. In the ALJ's opinion, Termini's actions did not rise to the level of "misconduct" as that term is defined in section 602(A) of the Act.

¶ 9 The City appealed the ALJ's decision to the Department's Board of Review ("the Board"). The parties each submitted in writing the same arguments that they made to the ALJ. The Board reviewed the transcript of the proceedings before the ALJ and determined that the record adequately set forth the evidence and that further evidentiary proceedings were unnecessary. Based on its review of the transcript and the written arguments of the parties, the Board issued a written decision setting aside the ALJ's ruling and instead determining that Termini was not eligible for unemployment benefits. The Board explained its decision as follows:

"In this case, the claimant may or may not have had a chance to review the electronic communications policy. However, even if he did not know making threats was prohibited by the employer, it is against the law. The claimant admitted that he wrote and posted the statement. Although he did not mean it to be a threat, the employer and possibly his coworkers considered it a threat. Judging the posting under a reasonable man standard and its common sense meaning, the Board finds that the claimant made a public threat of violence in the workplace, in violation of law and the employer's policies, which harmed the employer because it disrupted its operations and spent time investigating the incident. Accordingly, we find that the claimant was discharged for misconduct connected with work."

¶ 10 Termini filed a complaint in the circuit court seeking judicial review of the Board's decision. He argued in his complaint that he did not willfully violate any reasonable work rule and that the post did not harm the City. The City did not file a response and instead relied on the administrative record. The circuit court affirmed the Board's decision. Unlike the Board, the court did not base its ruling on Termini having violated the law, but rather on Termini having violated a City personnel rule. The court reasoned that the City's policies against harassment and violence were admitted to the record and were shown to have been in place at the time of the posts in question, and the court found that the Board's findings that Termini acted willfully and that the posts harmed the City were supported by the record. This appeal follows.

¶ 11 Section 602(A) of the Act provides that a terminated employee is ineligible for unemployment benefits if he was discharged for "misconduct connected with his work." In order to establish that an employee was terminated for such "misconduct," an employer must show: "(1) a deliberate and

willful violation (2) of a reasonable rule or policy of the employer governing the individual's behavior in the performance of her work, that (3) either (a) harmed the employer or a fellow employee or (b) was repeated despite a warning or explicit instruction from the employer." *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 26. Termini's arguments on appeal are based on the first and second of these elements, specifically that the City failed to show that he "willfully" violated a City rule and that, to the extent that the Board found that he violated a law, the record failed to establish such a violation. Our review in this appeal is of the Board's decision, not that of the circuit court, and because Termini's arguments do not challenge a finding of fact or an interpretation of law and instead ask us review the Board's application of the law to established facts, we are presented with a mixed question of law and fact to which we apply the "clearly erroneous" standard. See *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814, 820 (2009). "An agency's decision will be deemed clearly erroneous only if, based on the entirety of the record, the reviewing court is left with the 'definite and firm conviction that a mistake has been committed.' " *Id.* (quoting *AFM Messenger Service, Inc. v. Department of Employment Security,* 198 Ill. 2d 380, 393 (2001)).

¶ 12 Termini's primary argument on appeal is that the City failed to show that he willfully violated a reasonable rule or policy because he was never provided with the City's policy prohibiting electronic harassment, which was implemented many years after he was hired. In essence, Termini contends that he could not have willfully violated a policy that he never knew existed. On that point, Termini is generally correct that "the requirement that a rule violation be 'deliberate and willful' necessarily requires evidence that the employee was aware that [his] conduct was prohibited." *Petrovic*, 2016 IL 118562, ¶ 31. However, the Board did not find that Termini violated

a City policy or rule. Rather it found that he violated the law and that criminal conduct constitutes misconduct within the context of section 602(A). This conclusion was not clearly erroneous.

¶ 13 The purpose behind the misconduct exclusion in section 602(A) is "to prevent abuse of the unemployment insurance system by those whose termination is essentially by choice" (*id.* ¶ 31) by excluding individuals "who intentionally commit conduct which they know is likely to result in their termination" (*id.* ¶ 27). Based on this principle, courts have established that misconduct encompasses not just violations of employer rules, but also violations of the law. *Id.* ¶ 35. Indeed, "where an employee's behavior would constitute a crime, *** it is fair to say that the employee knows his actions are likely to result in termination." *Id.* ¶ 36. Accordingly, the Board could have properly found Termini ineligible for benefits based on a violation of the law rather than a violation of an employer rule.

¶ 14 As for whether or not Termini's conduct violated the law, Termini points out that the Board's decision does not specifically mention which law he violated, and Termini contends that we are, therefore, unable to adequately review the Board's decision. At a minimum, Termini argues that we should remand the case to the Board for clarification. But we do not believe that is necessary.

¶ 15 In its protest against Termini's application for benefits, the City expressly stated that Termini violated section 26.5-3 of the Criminal Code, and that filing from the City was part of the record before the Department and the Board. See 820 ILCS 405/801 (West 2020) (providing that "any document in the files of the Department of Employment Security submitted to it by any of the parties, shall be a part of the record, and shall be competent evidence bearing upon the issues"). Furthermore, "specific findings of fact by the agency are not necessary for judicial review"

(*Mahonie v. Edgar*, 131 Ill. App. 3d 175, 178 (1985)), and an appellate court can affirm a judgment on any basis contained in the record (*Department of Healthcare & Family Services ex rel. Hodges v. Delaney*, 2021 IL App (1st) 201186, ¶ 28). Accordingly, a statement from the Board regarding the precise basis for its ruling is not necessary to our review, so long as we can determine from the record whether Termini's conduct violated the law. Furthermore, when we look at the record as a whole in conjunction with the Board's findings, and particularly the Board's statement that Termini "made a public threat of violence in the workplace," it seems clear that the Board found that Termini's conduct amounted to the offense of harassment through electronic communications.

¶ 16 Section 26.5-3 of the Criminal Code proscribes harassment through electronic communications and specifically prohibits, in relevant part, using an electronic communication for the purposes of "[t]hreatening injury to the person or to the property of the person to whom an electronic communication is directed or to any of his or her family or household members." Regarding what constitutes an illegal threat, " '[t]rue threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.' " *People v. Ashley*, 2020 IL 123989, ¶ 33, *as modified on denial of reh'g* (Mar. 23, 2020) (quoting *Virginia v. Black*, 538 U.S. 343, 359 (2003)). " 'The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats protect[s] individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur.' " *Id.* (quoting Black, 538 U.S. at 359–60); see also *People v. Greenfield*, 2021 IL App (1st) 190952-U, ¶ 28 (applying the definition of "true threat" in its interpretation of "threatening injury" as used in section 26.5-3) (unpublished order under Supreme Court Rule 23).

¶ 17 As for the meaning of "injury," the statute does not define that term, nor does any caselaw concerning section 26.5-3 or any related harassment offenses. This leaves us a little in the dark about what types of threatened conduct might amount to the offense of harassment through electronic communications. For instance, does the threatened injury need to be a physical or bodily injury, or might it also include emotional, reputational, or financial injury? Regardless, we do not believe that it is necessary to define the bounds of that term in order to resolve the issues presented in this case.

¶ 18 The Board described Termini's threat as one of "violence," the same term used in the definition of "true threat." The use of the word "violence" seemingly implies that the Board viewed the threatened injury as a physical one. Of all of the types of injuries that might be included in the term "injury" as it is used in section 26.5-3, common sense suggests that physical injury would be the most likely inclusion. Thus, the Board's view of the threat appears to fall within the bounds of the statute. And when we look at the precise language that Termini used, we cannot say that the Board's opinion on this point was clearly erroneous. Again, Termini stated in his Facebook post: "This is really getting old. I'm sick of this. How is it that money comes before safety? Well, you've been warned. You better pray this doesn't touch my life because I'll take you all with me." The phrases, "you've been warned" and "I'll take you all with me," when read together, could reasonably be read as a threat of violence. Indeed, several of Termini's coworkers reported feeling threatened by Termini's post and feared that he "might actually come into the workplace and harm them."

¶ 19 It is true that the language in the Facebook post was somewhat ambiguous. But even if we were to take Termini at his word and view the post not as a threat of violence but as a threat to

come to work while sick with COVID-19 and spread the illness to others, we would still view Termini's post as a threat to injure his coworkers. It is common knowledge that people who contract COVID-19 can become severely ill, experience long-lasting damage to their body, or even die. See *About COVID-19*, Centers for Disease Control and Prevention (May 11, 2023) (available at https://www.cdc.gov/coronavirus/2019-ncov/your-health/about-covid-19.html); see also *Edward Sims Jr. Trust v. Henry County Board of Review*, 2020 IL App (3d) 190397 ("It is generally accepted that a court may take judicial notice of the information on a government website."). Therefore, it would be reasonable to view a threat to intentionally infect someone with COVID-19, a potentially damaging and deadly illness, as a threat to cause them bodily injury. *Cf.* Ill. Pattern Jury Instr.-Criminal 11.65A (defining "bodily harm" as including sexually transmitted diseases). Accordingly, for each of the above reasons, we cannot say that the Board clearly erred in concluding that Termini's Facebook post constituted an illegal threat to injure.

¶ 20 Based on the foregoing, we affirm the Board's determination that Termini was dismissed for misconduct and is ineligible for unemployment benefits.

¶ 21    Affirmed.